Docket No. 104826.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

HOUSEHOLD BANK, FSB, v. JEWEL LEWIS *et al.* (Addie Glenn-Tate, Appellant; Greenwich Investors XVI, LLC, Appellee).

*Opinion filed May 22, 2008.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

The issue in this case is whether the Illinois Mortgage Foreclosure Law (735 ILCS 5/15–1101 *et seq.* (West 2004)) permits a circuit court to vacate a judicial sale at the mortgagee's request where the mortgagor has succeeded in finding her own buyer for the subject property, with the mortgagee's approval, after the statutory redemption period has expired but before the judicial sale has been confirmed. The circuit court of Cook County believed that it does and ordered the judicial sale vacated. The high bidder at that sale objected and appealed. The appellate court reversed and remanded with instructions that the circuit court confirm the judicial sale. 373 Ill. App. 3d 420. We granted leave to appeal. 210 Ill. 2d R. 315. For the reasons that follow, the judgment of the appellate court is reversed and the circuit court's judgment is affirmed.

The pertinent facts are undisputed. In 1999, Jewel Lewis executed a promissory note in the principal amount of $62,100.00 secured by a mortgage on her home. The mortgage was held by Household Bank.

Lewis subsequently defaulted on the obligations which she owed pursuant to the promissory note and mortgage.[1] Household responded by initiating foreclosure proceedings under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15–1101 *et seq.* (West 2004)). When Lewis failed to answer Household's complaint, the circuit court entered a default judgment in Household's favor in the amount of $80,720.02. The judgment was entered March 17, 2005, and provided that the statutory period of redemption would expire on June 17, 2005, after which the property would be sold.

In accordance with the circuit court's judgment, a notice was filed May 20, 2005, stating that the property would be sold to the highest bidder on June 21, 2005. A sale was duly conducted on that date. The highest bidder was Greenwich Investors XVI, LLC (Greenwich). Its bid was $48,071, a figure substantially less than the amount due under the default judgment entered against Lewis.

On June 29, 2005, eight days after the judicial sale, Household sought and obtained an order from the circuit court continuing proceedings for approval of that sale in order to allow Lewis to attempt to negotiate a private sale of the property herself. Lewis' efforts were successful and she was able to sell her home to Addie Glenn-Tate on July 7, 2005, for the sum of $67,945. Lewis tendered the proceeds of that sale to Household, and Household accepted them as payment in full of the amounts due under the promissory note and mortgage on July 12, 2005. One week later, a deed was recorded showing that Glenn-Tate had purchased the property and was now its owner.

---

[1]The appellate court's opinion states that an entity known as Provincetown Improvement Association also defaulted on the mortgage. 373 Ill. App. 3d at 420. While Provincetown was named as a defendant in the foreclosure action, along with "nonrecord claimants, unknown tenants and unknown owners," Provincetown was not a signator to either the promissory note or the mortgage.

Immediately after receiving the sale proceeds from Lewis, Household requested leave to withdraw its motion to confirm the judicial sale. That motion was granted. The following month, Household moved to have the judicial sale vacated. Greenwich objected to these developments and was granted leave to intervene and to file a response. In its response, Greenwich complained of the absence of documentation for Household's representation that it had accepted $67,945 in payment from Lewis. It protested that it "pays significant costs to have its money available to bid at sale" but, because of Household's actions, that money was allowed "to just sit." In addition, it asserted that vacating the sale was "a clear abuse of the judicial process and the Illinois Mortgage Foreclosure Act" and "a violation of justice."

Household filed a reply to Greenwich's response. The circuit court rejected Greenwich's arguments and granted Household's motion to vacate the judicial sale. The court also ordered the proceeds of that sale to be returned to Greenwich. With these actions, the foreclosure proceedings concluded.

Greenwich filed a timely posttrial motion for reconsideration, contending that the judicial sale should not have been vacated for the reasons it had previously asserted. In the alternative, Greenwich sought $27,000 in damages from Household under the theory of tortious interference with prospective economic advantage.

Household filed a written response. Greenwich's motion was subsequently denied by the circuit court. Greenwich appealed. The appellate court reversed and remanded to the circuit court with instructions that the judicial sale to Greenwich be confirmed, holding that the circuit court's refusal to confirm the sale constituted an abuse of discretion. 373 Ill. App. 3d at 423.

Following the appellate court's action, Household indicated that it would no longer attempt to defend the sale to Glenn-Tate. At the same time, it refused to disgorge the sale proceeds to her. In order to protect her position, Glenn-Tate therefore petitioned the appellate court for leave to intervene. That petition was granted. In her capacity as an intervening party, Glenn-Tate then petitioned our court for leave to appeal (210 Ill. 2d R. 315), which we allowed.

As grounds for her appeal, Glenn-Tate contends that the circuit court's decision to vacate the judicial sale at Household's request was supported by the provisions of the Illinois Mortgage Foreclosure Law and the policies underlying that statute. She asserts that the appellate court therefore erred when it set aside the circuit court's judgment and ordered that the judicial sale be confirmed.

Greenwich, for its part, contends that the appellate court's analysis was sound and that the result it reached was correct. It argues that while a circuit court has the discretion to refuse to confirm a judicial sale under certain circumstances, that discretion is not so broad as to authorize a court to refuse to confirm a judicial sale based on a private sale which occurs after the statutory redemption period has expired and the judicial sale has already taken place.

Resolution of the foregoing issues turns on questions of statutory construction and the application of the law to undisputed facts. Our review is therefore *de novo*. See *City of Champaign v. Torres*, 214 Ill. 2d 234, 241 (2005).

Confirmation of judicial sales is governed by section 15–1508 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15–1508 (West 2004)). Subsection (b) of that statute provides:

> "Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15–1507 [735 ILCS 5/15–1507] was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15–1508(b) (West 2004).

In speaking of a court's obligations, the foregoing statute uses the word "shall." The Illinois Mortgage Foreclosure Law expressly provides that when "shall" is used, it means that something is "mandatory and not permissive." 735 ILCS 5/15–1105(b) (West 2004). Under the terms of statute, a court therefore has mandatory obligations to (a) conduct a hearing on confirmation of a judicial sale where a motion to confirm has been made and notice has been given,

and, (b) following the hearing, to confirm the sale unless it finds that any of the four specified exceptions are present.

The provisions of section 15–1508 have been construed as conferring on circuit courts broad discretion in approving or disapproving judicial sales. See *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 269 Ill. App. 3d 293, 300 (1995). A court's decision to confirm or reject a judicial sale under the statute will not be disturbed absent an abuse of that discretion. See *Fleet Mortgage Corp. v. Deale*, 287 Ill. App. 3d 385, 388 (1997); see also *Blancett v. Taylor*, 6 Ill. 2d 434, 437 (1955) (addressing judicial sales generally).

As we have indicated, the appellate court in this case concluded that the circuit court abused is discretion when it vacated the judicial sale and refused to confirm it under section 15–1508(b). In our view, however, the appellate court's focus on whether the circuit court abused its discretion was misguided. The exercise of discretion in applying section 15–1508(b) is necessary only when the requirements of that law have become operative. Under the terms of the statute, they do not become operative until they have been invoked by a motion requesting confirmation of the sale. Although a motion to confirm was filed by Household, the mortgagee, the motion was withdrawn before any action on it was taken. A statutory prerequisite to the confirmation process was thereby eliminated. Correspondingly, the mandatory provisions of section 15–1508(b) were not triggered. Under these circumstances, the dispositive question is not whether the circuit court's actions constituted an abuse of discretion under section 15–1508(b). It is, instead, whether the circuit court was obligated to proceed with the confirmation process even after Household, which initiated the foreclosure proceedings, elected not to pursue them.

Resolution of this issue implicates basic principles regarding a party's right to control its own litigation. In addressing that issue, we begin by noting that the reason for Household's decision to forgo its remedies under the Illinois Mortgage Foreclosure Law was clear. Lewis' success in selling the property to Glenn-Tate enabled the company to recover a significantly larger amount of the debt than it would have through the foreclosure process. From Household's perspective, further pursuit of foreclosure proceedings would have been counterproductive.

Several decades ago, in a case recognizing the right of a plaintiff in a tax foreclosure case to voluntarily dismiss the case after receiving payment for the amount of the delinquent taxes, we observed that

> "[t]hose who invoke the jurisdiction of the courts do not thereby irrevocably commit themselves to that course of action. Litigation, as a means of resolving disputes, should be employed sparingly. Other methods of solution have long been favorably regarded by the courts, and when, as here, the underlying reason for particular litigation has vanished, the foundation upon which the action stood is ordinarily destroyed." *People v. American National Bank & Trust Co.*, 32 Ill. 2d 115, 120-21 (1965).

Consistent with this view, our system of civil justice has recognized that a plaintiff is ordinarily the master of his or her cause of action. *People v. American National Bank & Trust Co.*, 32 Ill. 2d at 120. Under the common law, plaintiffs were permitted to voluntarily dismiss their claims without prejudice any time prior to entry of judgment. Through section 2–1009 of the Code of Civil Procedure (735 ILCS 5/2–1009 (West 2004)), our legislature has now qualified this right in order to discourage vexatious suits, "but only by preventing an automatic voluntary dismissal *without prejudice* after trial or hearing commenced." (Emphasis added.) *Kahle v. John Deere Co.*, 104 Ill. 2d 302, 307-08 (1984). Even if we assume, for the sake of argument, that the operative "hearing" in this case was the hearing on the foreclosure complaint rather than the hearing on confirmation of the sale and that Household's motion to vacate came after the hearing commenced, the foregoing statutory qualification is not controlling here. That is so because when Household moved to withdraw the motion to confirm and to vacate the judicial sale in this case, it clearly intended to forgo any future claim it might assert to have the property sold by the court based on Lewis' default. Household was, in effect, dismissing that claim with prejudice. The statutory restrictions governing voluntary dismissals without prejudice are therefore inapplicable.

Greenwich argues that allowing mortgagees to accept private sales after a judicial sale has been conducted but before the judicial sale has been confirmed will undermine the settled expectations of those who bid at judicial sales, deter such bidders from participating

in the judicial sale process, and thereby undermine the purposes of the Illinois Mortgage Foreclosure Law.

We find this argument unpersuasive. First, it assumes that being the highest bidder at a judicial sale confers on the bidder some legally cognizable interest in the property. It does not. See *Jennings v. Dunphy*, 174 Ill. 86, 90-91 (1898). The highest bid received by a sheriff at a judicial foreclosure sale is merely an irrevocable offer to purchase the property. The offer is not deemed to have been accepted and the sale is not complete until it has been confirmed by the circuit court. See *Plaza Bank v. Kappel*, 334 Ill. App. 3d 847, 852 (2002). Numerous factors may affect a circuit court's decision to confirm the sale, including issues of notice, unconscionability and fraud. 735 ILCS 5/15–1508(b) (West 2004). In addition, even after the sale is confirmed, the bidder may discover that the property is subject to prior tax liens or other encumbrances that affect the property's value. Any expectations a bidder may have regarding property offered at a judicial foreclosure sale are therefore speculative.

Second, Greenwich's argument presupposes that protecting the position of third-party bidders should be the preeminent principle guiding our construction of the laws governing judicial sales. We find no support for that view. It is true that our court has long recognized the need to promote stability in the conduct of judicial sales so as not to " 'impair that confidence so essentially necessary to induce persons to become purchasers when real estate is offered for sale under a judgment or decree of a court.' " See *Abbott v. Beebe*, 226 Ill. 417, 420 (1907), quoting *Conover v. Musgrave*, 68 Ill. 58, 62 (1873). At the same time, however, the courts have also consistently held that the law favors redemptions (*Skach v. Sykora*, 6 Ill. 2d 215, 224 (1955); *Rodman v. Quick*, 217 Ill. 162, 164 (1905)) and protection of a mortgagor's equity in the property (see *Fleet Mortgage Corp. v. Deale*, 287 Ill. App. 3d at 389).

Balancing these competing policy considerations is ultimately a matter for the legislature. See *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 319 (2006). Nothing in the current statutory scheme enacted by our General Assembly prohibits mortgagees from declining to seek confirmation of a judicial sale and abandoning foreclosure proceedings where, as here, the mortgagor is able to arrange a private sale for a price acceptable to the mortgagee.

If the legislature had intended to impose such a prohibition, it could have specifically done so. It did not and we cannot. As we have often held, a court may not add provisions that are not found in a statute, nor may it depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express. *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 495 (2008), citing *People v. Lewis*, 223 Ill. 2d 393, 402 (2006).

In ruling for Greenwich, the appellate court relied on the provisions of section 15–1605 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15–1605 (West 2004)), which provides, in part, that "[n]o equitable right of redemption shall exist or be enforceable under or with respect to a mortgage after a judicial sale of the mortgaged real estate." Following an earlier appellate court decision in *Washington Mutual Bank, FA v. Boyd*, 369 Ill. App. 3d 526, 530 (2006), the appellate court in this case construed section 15–1605 as precluding *any* private sale or redemption of the property after the statutory redemption period has expired and a judicial sale under section 15–1507 of the Illinois Mortgage Foreclosure Act (735 ILCS 5/15–1507 (West 2006)) has been conducted.

Such a construction is not supported by the language of the statute itself. By its terms, section 15–1605 does not purport to bar all redemptions. It merely extinguishes the "equitable right of redemption." The equitable right of redemption is a right that belongs to the mortgagor and is implicated only when a mortgagor wishes to forestall efforts by a mortgagee to terminate the mortgagor's ownership interest in the property. See *First Illinois National Bank v. Hans*, 143 Ill. App. 3d 1033, 1037 (1986). That situation is not present here. Lewis, the mortgagor, did not attempt to invoke any right adverse to the interests of Household, the mortgagee, in order to preserve her ownership of the residence in question. When Household initiated foreclosure proceedings, Lewis simply defaulted. Redemption was permitted by Household purely as a matter of grace after a private third-party buyer was found. That is a situation to which 15–1605 does not speak.

Finally, we note that while the statutory right of redemption enures to the benefit of mortgagors, the temporal limitations on the exercise of that right, including the bar against revival of expired redemption rights (see 735 ILCS 5/15–1603(c) (West 2004)), are

-8-

designed to benefit mortgagees such as Household. Illinois law recognizes that a party may waive a statutory provision designed for its benefit. See *In re Application of the County Collector for Judgment & Order of Sale Against Land & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1996 & Prior Years*, 318 Ill. App. 3d 641, 645 (2000). Exceptions to the waiver rule may be established by the General Assembly (see, *e.g.*, 735 ILCS 5/15–1601(a) (West 2004) (restricting mortgagor's right to waive its rights of reinstatement and redemption)), but no restriction has been imposed on a mortgagee's freedom to permit redemption, as a matter of grace, after the statutory redemption period has passed and before the judicial sale has been confirmed. Household was therefore entitled to allow belated redemption of the subject property in this case rather than seek confirmation of the judicial sale.

For the foregoing reasons, the circuit court did not err when it granted Household's motion to vacate the judicial sale. The judgment of the circuit court is therefore affirmed and the judgment of the appellate court is reversed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*