# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *CitiMortgage, Inc. v. San Juan*, 2012 IL App (1st) 110626

---

| | |
|---|---|
| Appellate Court Caption | CITIMORTGAGE, INC., Plaintiff-Appellant, v. VIVIAN SAN JUAN; FIVE THOUSAND EAST END AVENUE BUILDING CORPORATION; CAMERON L. BASDEN; CITIBANK, N.A., Under Security Agreement Recorded December 21, 2006 as Document Number 0635555073; NONRECORD CLAIMANTS; AND UNKNOWN OWNERS, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-0626 |
| Rule 23 Order filed | June 28, 2012 |
| Rule 23 Order withdrawn | July 30, 1012 |
| Opinion filed | August 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff mortgagee's petition under section 2-1401 of the Code of Civil Procedure seeking to vacate a judgment of foreclosure and confirmation of sale entered in its favor but also subjecting it to liability for past-due assessments was properly denied where plaintiff failed to present a meritorious defense or claim. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-30407; the Hon. Darryl B. Simko, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Law Offices of Ira T. Nevel, LLC, of Chicago (Ira T. Nevel, of counsel), for appellant. |
| --- | --- |
| | Levenfeld Pearlstein, LLC, of Chicago (Christopher M. Heintskill and Paul J. Ochmanek Jr., of counsel), for appellee Five Thousand East End Avenue Building Corp. |
| Panel | JUSTICE STERBA delivered the judgment of the court, with opinion. Presiding Justice Lavin and Justice Fitzgerald Smith concurred in the judgment and opinion. |

**OPINION**

¶ 1    CitiMortgage, Inc., commenced foreclosure proceedings on a security interest held in a unit located in a cooperative building. CitiMortgage purchased that unit at a judgment sale and the trial court entered an order confirming the sale. CitiMortgage then filed a petition to vacate the trial court's order confirming the sale of the unit pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)) when it discovered that it would be liable for paying past-due assessments and that the cooperative building planned to convert its apartments into condominiums. CitiMortgage appeals the trial court's denial of its section 2-1401 petition claiming that the trial court erred in finding that it failed to raise a meritorious defense. CitiMortgage claims that because it was seeking to vacate a judgment entered in its favor, it was not required to present a meritorious defense. In the alternative, CitiMortgage claims that the newly discovered evidence of past-due assessments amounting to $50,000 and the cooperative building's conversion into condominiums raises a meritorious defense. For the reasons that follow, we affirm.

¶ 2                                BACKGROUND

¶ 3    On August 26, 2009, CitiMortgage filed a complaint to foreclose a cooperative security agreement (Agreement). The Agreement was executed on December 19, 2003, between it and Vivian San Juan and Cameron L. Basden, who were the shareholders of property located at 5000 East End, Unit 6D in Hyde Park, Illinois, which was an apartment in a cooperative building. San Juan and Basden owned 66 shares in the cooperative building. The owner of the premises was Five Thousand East End Building Corporation (Building Corporation), and San Juan and Basden were shareholders. The total amount of the original indebtedness stated in the Agreement was $55,600, and the principal balance outstanding was $51,649.25.

¶ 4    On October 21, 2009, Building Corporation filed its answer to CitiMortgage's complaint to foreclose the Agreement, which asserted priority as an affirmative defense. Building Corporation claimed that "by virtue of the Proprietary Lease and Recognition Agreement,

the right, title and interest of the Building Corporation to payment of its assessments and fees, is prior and superior to the interest of the Plaintiff herein." Building Corporation asserted that it must be paid for past-due amounts before CitiMortgage could receive any distributions resulting from the disposition of the shares. Attached to the answer was the affidavit of Brooke Finlan, who was Building Corporation's property manager, which stated that Building Corporation was owed $18,934.79 in past-due assessments, charges and fees as of October 15, 2009.

¶ 5      On November 10, 2009, Building Corporation issued to CitiMortgage a certificate identifying it as the owner of 66 shares of capital stock of the building, which were the shares owned by San Juan and Basden.

¶ 6      On December 8, 2009, CitiMortgage filed a motion for default and certificate of service against San Juan and Basden. On that same day, CitiMortgage also filed a motion for summary judgment against Building Corporation. On January 21, 2010, the trial court entered an order of default against San Juan and Basden. Also on that day, the trial court entered an order granting CitiMortgage's motion for summary judgment and simultaneously entered the judgment of foreclosure and order of sale. The judgment of foreclosure stated that CitiMortgage's mortgage was superior to all other defendants' liens, rights or claims upon the real estate, and that the total amount due to CitiMortgage was $58,726.40. The judgment of foreclosure also provided that CitiMortgage shall pay any real estate taxes, assessments or any other advances during the statutory period of redemption, which expired on April 21, 2010. The foreclosure sale occurred on May 21, 2010, and CitiMortgage was the highest bidder offering $34,126.

¶ 7      In May 2010, Building Corporation filed a forcible entry and detainer action against Citibank. This action did not proceed to trial because CitiMortgage's mortgage was superior to all other defendants' liens, rights or claims. Building Corporation's counsel was not aware of the pending foreclosure action until Citibank's counsel brought that proceeding to his and the trial court's attention.

¶ 8      On August 4, 2010, Building Corporation filed a stipulated motion for substitution of counsel, motion to vacate the judgment of foreclosure, and to disapprove the report of sale. Building Corporation asserted that in its answer to the complaint, it stated that the foreclosure action involved a residential cooperative and that CitiMortgage's interest was subject to and subordinate to its interest. Building Corporation claimed that CitiMortgage misled the court because it failed to inform it about the existence and effect of the recognition agreement executed between it and CitiMortgage on December 19, 2003, which provided that Building Corporation's lien was superior to CitiMortgage's lien. The trial court entered an order on August 12, 2010 continuing Building Corporation's motion to vacate to September 2, 2010.

¶ 9      Also on August 4, 2010, CitiMortgage filed a motion for confirmation of sale, and the trial court on August 10, 2010, entered an order confirming the sale.

¶ 10      On September 2, 2010, the trial court entered an order granting Building Corporation's stipulated motion for substitution of counsel. The trial court also granted in part Building Corporation's motion to vacate the judgment of foreclosure, and amended the judgment of

foreclosure to provide it with a lien, right or claim superior to all other parties, including CitiMortgage, and CitiMortgage now had a lien, right or interest subordinate to Building Corporation, but superior to all other defendants. The trial court also ruled that Building Corporation's motion to disapprove the report of sale was stricken.

¶ 11    Lee Ann Cummings, president of the board of directors of building corporation, sent CitiMortgage's attorney an e-mail on October 29, 2010. The e-mail indicated that she spoke with CitiMortgage's attorney on that day and that she had explained the conversion process to him, which was ongoing for the past two years. Cummings stated in the e-mail that all documents were sent to CitiMortgage "every single time there [was] information regarding this conversion." Cummings also stated that on March 8, 2010, "a vote was taken of the shareholders and a super-majority voted to move forward with the conversion to a condominium and dissolve the cooperative." Cummings estimated that conversion buyouts would range from $60,000 to $176,000.

¶ 12    On November 5, 2010, CitiMortgage filed a motion to vacate the May 21, 2010 judicial sale, the August 10, 2010 order confirming the sale, the January 21, 2010 judgment of foreclosure and for entry of an order voluntarily dismissing the case pursuant to section 2-1401. In this motion, CitiMortgage asserted that the conversion of the cooperative apartment into a condominium renders the purchased interest virtually worthless and imposes upon it excessive liabilities, both of which were previously unknown to it. CitiMortgage claimed that it would cost between $60,000 to $176,000 to purchase the foreclosed upon unit from the cooperative association, and past-due assessments, attorney fees and costs totaling approximately $50,000 would be due. CitiMortgage asserted that if Building Corporation had informed it about those charges, it would not have proceeded with the foreclosure action.

¶ 13    On January 25, 2011, the trial court denied CitiMortgage's section 2-1401 petition finding that no meritorious defense was stated in the petition.[1] CitiMortgage timely filed this appeal.


¶ 14                                    ANALYSIS

¶ 15    As an initial matter, Building Corporation claims that CitiMortgage waived review of the assessment and conversion issues on appeal because it failed to object to its motion to vacate

---

[1]The copy of the order in the record states the following:

> "This matter coming on *Pltf's* 2-1401 motion to vacate judgment, sale + sale confirmation; the court advised in the premises and argument having been heard
>
> It is hereby ordered:
>
> 1) *Defendant's* 2-1401 motion is denied as the court finds there is no meritorious defense stated." (Emphasis added.)

On appeal, CitiMortgage claims that its section 2-1401 petition was denied, and the trial court's January 25, 2011 order is the subject of the issues on appeal. We note that Building Corporation's section 2-1401 petition was ruled upon by the trial court on September 2, 2010. Thus, we conclude that a scrivener's error caused the word "Defendant's" instead of the word "Plaintiff's" to be stated in the trial court's January 25, 2011 order.

or the trial court's order amending the judgment of foreclosure. Although it is true that CitiMortgage did not file those pleadings identified by Building Corporation, it seeks review of its own section 2-1401 petition raising newly discovered evidence that the trial court denied, and it is not seeking review of the trial court's rulings relating to any of Building Corporation's motions. Thus, CitiMortgage has not waived review of its section 2-1401 petition.

¶ 16    CitiMortgage first claims that it is not required to satisfy section 2-1401's standard requirements of presenting a meritorious defense or claim and exercising due diligence because it seeks to vacate a judgment entered in its favor. CitiMortgage contends that review of the trial court's denial of a section 2-1401 petition seeking to vacate a judgment of foreclosure entered in favor of the moving party is a matter of first impression.

¶ 17    CitiMortgage's claim that it is not required to satisfy the requirements of a section 2-1401 petition is not persuasive. CitiMortgage relies on *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173 (2008), to support its position that it may bring a motion to vacate a judgment entered in its favor, but its reliance is misplaced because *Household* is distinguishable from the instant case. In *Household*, the Illinois Supreme Court held that the trial court did not err in granting the mortgagee bank's motion to vacate the judicial sale in a foreclosure proceeding. *Id.* at 184. The *Household* court noted that a judicial sale is not complete until the trial court enters an order confirming the sale. *Id.* at 181. The mortgagee bank in *Household* moved to withdraw the motion to confirm the judicial sale and to vacate the sale. *Id.* at 180. Thus, the mortgagee bank sought to voluntarily dismiss its claim *prior* to the trial court's entry of judgment. See *id.* In the instant case, however, the trial court already entered judgment in CitiMortgage's favor, which it subsequently seeks to vacate pursuant to section 2-1401. For this reason, *Household* is distinguishable.

¶ 18    Section 2-1401 provides a party with relief from a final judgment, if the petition seeking relief is filed 30 days after entry of the original judgment. See 735 ILCS 5/2-1401 (West 2010). We note that section 2-1401's language does not differentiate between which party is bringing the petition to vacate, and it provides relief in every case where available. Section 2-1401 states in pertinent part that "[a]ll relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered." 735 ILCS 5/2-1401 (West 2010). The seminal case of *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986), provides additional guidance. In *Smith*, the Illinois Supreme Court set forth the requirements that must be met to obtain the relief provided for in section 2-1401. *Id.* According to *Smith*, "[t]o be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Id. Smith*, too, does not differentiate between the prevailing or losing party when it set forth the requirements that must be satisfied to prevail on a section 2-1401 petition. Instead, *Smith* refers generally to "petitioner."

¶ 19    Here, CitiMortgage, as the moving party bringing the section 2-1401 petition, is the

-5-

petitioner. Based on the statutory language of section 2-1401 and the principles articulated in *Smith*, we find no basis to create an exception to the requirements of section 2-1401 for a petitioner seeking to vacate a judgment entered in its favor as urged by CitiMortgage. Accordingly, we reject CitiMortgage's contention that it is not required to present a meritorious defense or claim. We note that CitiMortgage in its brief states that a sufficient reason or explanation should be all that is required at most to vacate a judgment entered in its favor. We see little distinction between CitiMortgage's acknowledgement that a sufficient reason or explanation at minimum should be provided to vacate a judgment and requiring that the petitioner present a meritorious defense or claim. Under both scenarios, the petitioner must present a reason or claim why the trial court's prior judgment should be vacated. We conclude that by requiring the pleading of a meritorious defense or claim, a uniform standard exists for the trial court to adopt in deciding whether to vacate a previously entered judgment.

¶ 20    We next turn to address the merits of the claim that CitiMortgage raises as a basis to vacate the trial court's prior judgment. CitiMortgage asserts that newly discovered evidence reveals that Building Corporation concealed and materially omitted during the prior proceedings its knowledge regarding assessments in arrears amounting to approximately $50,000 and the cooperative apartment's conversation into a condominium, which resulted in an estimated repurchase price of the unit between $60,000 to $167,000. CitiMortgage maintains that had it known about the newly discovered evidence, it would not have proceeded with the foreclosure action. CitiMortgage claims that the newly discovered evidence establishes a meritorious defense or claim, and the trial court erred in denying its section 2-1401 petition.

¶ 21    A petitioner establishes a meritorious defense when he "allege[s] facts that would have prevented entry of the judgment if they had been known by the trial court." *Blutcher v. EHS Trinity Hospital*, 321 Ill. App. 3d 131, 136 (2001). The purpose underlying a section 2-1401 petition is to allow the petitioner to raise in the trial court facts that are absent from the record, but, if the facts had been known, the trial court would not have entered the judgment that it did in the underlying proceedings. *Id.* at 135-36. The petitioner of a section 2-1401 petition must establish by a preponderance of the evidence the existence of a meritorious defense or claim and due diligence in pursuing the claim or defense. *Smith*, 114 Ill. 2d at 220-21. The granting or denial of a section 2-1401 petition rests with the sound discretion of the trial court, after considering the facts and equities presented. *Id.* at 221. This court will reverse the trial court's ruling on a section 2-1401 petition only where the trial court abused its discretion. *Id.* A trial court abuses its discretion where "the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court." *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010).

¶ 22    Here, CitiMortgage has failed to establish a meritorious defense or claim. The defense or claim that CitiMortgage asserts to support the granting of its section 2-1401 petition, which is that it was unaware of both the assessments in arrears totaling $50,000 and the conversion when the judgment of foreclosure and order confirming the sale was entered, is not persuasive. As Building Corporation maintains on appeal, its answer to the complaint raises an affirmative defense of priority. In its answer, Building Corporation asserted that CitiMortgage executed the recognition agreement, which states in relevant part:

-6-

"12. In the event the Corporation or the Bank conducts any sale or makes any other disposition of the Collateral (collectively, the 'Sale') pursuant to a default by the Borrower, the party conducting the Sale shall first be entitled to receive the reasonable expenses of the Sale after which the proceeds from the Sale shall be distributed as follows:

(i) First, to the Corporation to pay sums due under the By-Laws and the Proprietary Lease (including legal fees and costs)

(ii) Then to the Bank to pay the Indebtedness

(iii) Then to the Corporation or the Borrower as provided in the By-Laws or the Proprietary Lease provided, that, if the Bank pays the Corporation all amounts due under the By-Laws and the Lease and continues to pay such amounts as they become due, the Corporation shall not issue a new Certificate, enter into a new Lease or sell or otherwise dispose of the Collateral for an amount less than the sum of the amount of the Borrower's obligation to the Bank and the amount owed the Corporation under the Lease and the By-Laws, without the Bank's prior written approval."

CitiMortgage consented to the recognition agreement when it executed the agreement on December 19, 2003. Also in its answer, Building Corporation stated that the amount owed to it as of October 9, 2009, was $18,934.79 in past-due assessments, charges and fees, which was detailed in an attached affidavit. Because CitiMortgage executed the recognition agreement and the amount of assessment in arrears as of October 9, 2009, was disclosed in Building Corporation's answer, we disagree with CitiMortgage's contention that the amount of assessments, attorney fees and costs owed as of September 2, 2010, constitutes newly discovered evidence. CitiMortgage was on notice that a risk existed that it would be subject to past-due assessments and fees, and that the assessments and fees continued to accrue during the pendency of the proceedings. Thus, CitiMortgage had the duty to exercise due diligence to remain abreast of the amount of fees accruing throughout the proceedings and cannot successfully assert its lack of knowledge regarding the amount of assessments and fees accrued as a meritorious defense or claim.

¶ 23    Similarly, CitiMortgage fails to raise a meritorious defense or claim regarding the cooperative building's conversion into condominiums. The basis of CitiMortgage's meritorious defense or claim, here, is that had it known about the conversion process and the required buy-in amount, it would not have proceeded to the judicial sale, and it would have vacated the judgment of foreclosure and dismissed the foreclosure action at that time. CitiMortgage, however, does not establish that the trial court would not have entered the order confirming the sale had the conversion information been presented to the trial court. CitiMortgage's asserted meritorious defense or claim is that *it* would not have proceeded with the sale had it known about the conversion and the associated costs.

¶ 24    CitiMortgage also claims that Building Corporation had an affirmative duty to inform it that plans were in progress to convert the cooperative apartments into condominiums, and because it failed to provide the relevant information to CitiMortage, the newly discovered evidence provides it with a meritorious defense or claim. We disagree.

¶ 25    We note that in an e-mail dated October 29, 2010 to CitiMortgage's attorney, the

-7-

cooperative building's president, Lee Ann Cummings, stated that the conversion had been on-going for the last two years, and that the cooperative sent all documents relating to the conversion to CitiMortgage. The e-mail also stated that on March 8, 2010, "a vote was taken of the shareholders and a super-majority voted to move forward with the conversion to a condominium and dissolve the cooperative." Thus, the record reveals that Building Corporation claims to have notified CitiMortgage of the impending conversion. This claim, however, is rebutted by CitiMortgage's attorney's affidavit that was attached to CitiMortgage's section 2-1401 petition where the attorney stated that his communication with Cummings on October 29, 2010 was the first time that he or CitiMortgage became aware of the conversion process and that the assessments in arrears totaled $50,000. Because a transcript of the hearing on the section 2-1401 petition is not included in the record, we cannot conclude how in-depth this e-mail and the affidavit were discussed during the hearing. However, the e-mail and affidavit were attached to CitiMortgage's section 2-1401 petition and we, thus, conclude that the trial court reviewed and considered the content of the e-mail and affidavit and placed appropriate weight on those documents. Moreover, CitiMortgage fails to present case law supporting its position that Building Corporation had an affirmative legal duty to disclose to it and the trial court its future plans concerning the property.

¶ 26    CitiMortgage relies on *Department of Conservation v. Cipriani*, 202 Ill. App. 3d 986 (1990), to support its claim that errors in property valuation create a meritorious defense, but its reliance is misplaced. In *Cipriani*, this court held that the trial court erred in denying the petitioner's section 2-1401 petition because newly discovered evidence resulting from a subsequent letter of map revisions (LOMR) revealed that the petitioner's property was previously devalued when it was erroneously included in a flood plain based on a flood insurance study completed by the United States Soil Conservation Service. *Id.* at 991. This court reasoned that the trial court undoubtedly would have given the prior flood insurance study great weight since the study was conducted by a federal agency. *Id.* at 992. The subsequent LOMR, however, indicated that the prior flood insurance study was wrong. *Id.* at 991. Thus, the *Cipriani* court concluded that the subsequent LOMR was newly discovered evidence. The facts in *Cipriani* are clear that neither the parties nor the trial court knew when the judgment was entered that the prior LOMR was inaccurate, and all parties relied upon that report. In contrast, CitiMortgage in the case *sub judice* contends that Building Corporation knew, when the order confirming the sale was entered, that the cooperative building would be converted into condominiums. Thus, CitiMortgage cannot assert that neither party knew of the information that it claims was newly discovered. Also, CitiMortgage does not present evidence that it and the trial court relied upon a third-party prepared document that was subsequently discovered to be erroneous. For these reasons, *Cipriani* is distinguishable.

¶ 27    Moreover, CitiMortgage fails to persuade this court that its meritorious defense or claim based on newly discovered evidence is of the nature that customarily warrants relief pursuant to section 2-1401. For example, in *Blutcher v. EHS Trinity Hospital*, 321 Ill. App. 3d 131, 140 (2001), this court held that a meritorious defense existed where the plaintiff's attorney settled a case, but it was subsequently learned that he did not have the plaintiff's authority

or consent to settle. Also, in *Sunderland v. Portes*, 324 Ill. App. 3d 105, 111 (2001), this court held that minors satisfied the requirements of a section 2-1401 petition by presenting new facts establishing that the trial court knew during the underlying proceeding that the minors' attorneys withdrew, but the trial court did not know that the minors' parents would never obtain new counsel and do nothing to protect the minors' interest. However, in *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 458 (2000), the petitioner sought to vacate a judgment claiming that it dismissed its appeal on the belief that its opponent's motion for costs rendered the appeal premature. The *Jennings* court held that the petitioner's misunderstanding of its opponent's motion was a procedural mistake of law, which did not provide a sufficient ground to vacate a judgment, and that its opponent's attorney had no obligation to inform it that the appeal was not premature, but timely. *Id.*

¶ 28 Here, CitiMortgage claims that because it did not know of the cooperative building's future plans for conversion, the judgment of foreclosure should be vacated since its acquired interest is now rendered worthless unless it incurs additional costs to purchase the condominium. CitiMortgage also claims that Building Corporation knew about the conversion plans, but did not reveal those plans to it or the trial court so that proper decisions could be made prior to the sale. CitiMortgage's allegations all have the common element that it potentially would not have made the decision to continue with the foreclosure and sale proceedings had it known about the amount of assessments in arrears and the conversion. CitiMortgage, however, does not establish that the trial court would not have entered the judgment or order confirming the sale had it known about that same information. Also, CitiMortgage does not contend that Building Corporation prevented it from independently discovering the information regarding the amount of assessments past-due and the future conversion plans. Furthermore, we note that CitiMortgage did not file a response to Building Corporation's motion to vacate the judgment of foreclosure wherein it asserted its priority over CitiMortgage. In the instant case, the trial court did not abuse its discretion in denying CitiMortgage's section 2-1401 petition because CitiMortgage failed to present a meritorious defense or claim by a preponderance of the evidence. Moreover, because CitiMortgage executed the recognition agreement, and Building Corporation raised priority as an affirmative defense in its answer and filed its motion to vacate the judgment asserting priority before the trial court entered its order confirming the sale, the trial court did not abuse its discretion in refusing to invoke its equitable jurisdiction to vacate the judgment of foreclosure entered in CitiMortgage's favor.

¶ 29 CitiMortgage next contends that the trial court's September 2, 2010 order amending the judgment of foreclosure contradicts with the trial court's August 10, 2010 order confirming the sale, which was not vacated or amended. The order confirming the sale stated that "all claims of parties to the foreclosure are hereby terminated and barred pursuant to 735 ILCS 5/15-1509(c) including all Co-op assessments, charges and fees. Plaintiff shall be responsible for future amounts only after issuance of the aforesaid documents." Although CitiMortgage is correct that the order confirming the sale was not expressly amended, the trial court did, subsequent to entering that order, amend the judgment of foreclosure, which amended the priority among the parties and, thus, directly impacted the order confirming the sale. Also, in the September 2, 2010 order wherein the trial court amended the judgment of foreclosure,

it struck Building Corporation's motion to disapprove the report of sale. When the trial court subsequently amended the judgment of foreclosure, it effectively amended the order confirming the sale because the amended judgment of foreclosure now rendered Building Corporation's interest superior to CitiMortgage's interest. No confusion is created between the two conflicting orders as all parties know and understand that the subsequent amended judgment of foreclosure is the controlling document. CitiMortgage further contends that Building Corporation did not amend and assert its right of priority until after the trial court entered its order confirming the sale on August 10, 2010. Although it is true that the trial court did not rule upon Building Corporation's motion to vacate or amend the judgment of foreclosure until after it entered its order confirming the sale, contrary to CitiMortgage's claim, Building Corporation did file its motion to vacate asserting its priority rights two days *before* the trial court entered its order confirming the sale on August 12, 2010. Accordingly, the trial court's amended judgment of foreclosure is not rendered invalid because it conflicts with the previously entered order confirming the sale.

¶ 30       Finally, CitiMortgage claims that Building Corporation failed to provide it with notice of the conversion as set forth in the bylaws since it owned 66 shares in the corporation and that this failure of notice constitutes a change in circumstances warranting the granting of its section 2-1401 petition. CitiMortgage contends that the failure to provide the required notice is tantamount to fraud because it was denied information necessary to determine whether it should proceed with the foreclosure action.

¶ 31       Although Building Corporation issued a certificate representing ownership of 66 shares of capital stock to CitiMortgage before entry of the judgment of foreclosure and order of sale, we note that this is the request for relief set forth in CitiMortgage's complaint. CitiMortgage claims that Building Corporation prematurely issued to it the 66 shares in the cooperative building on November 10, 2009, and because Building Corporation did so, it was entitled to notice of the conversion and meetings in accordance with the bylaws. As previously stated, both the e-mail from Cummings stating that CitiMortgage received notice of the conversion plan and CitiMortgage's counsel's affidavit averring that he and CitiMortgage had no notice of the conversion process were presented to the trial court for its consideration. We note that the record is devoid of evidence indicating that CitiMortgage exercised due diligence before participating in the foreclosure sale and seeking an order confirming the sale by requesting information concerning the current amount of assessments in arrears and inquiring about any future plans involving the property. The record is also devoid of evidence demonstrating that Building Corporation purposely concealed and withheld information that CitiMortgage requested, which would have been tantamount to fraud. Accordingly, no change in circumstances occurred that warrants the granting of CitiMortgage's section 2-1401 petition.

¶ 32                                          CONCLUSION

¶ 33       For the reasons stated, we affirm the trial court's denial of CitiMortgage's section 2-1401 petition.

¶ 34       Affirmed.

-10-