2024 IL App (1st) 231994-U

No. 1-23-1994

Order filed August 16, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| FIFTH THIRD BANK, NATIONAL ASSOCIATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| MARTHA GOULD; LUIS PAYAN; JAMES E. GOULD; | ) | |
| UNITED STATES OF AMERICA – SECRETARY OF | ) | No. 22 CH 1694 |
| HOUSING AND URBAN DEVELOPMENT; | ) | |
| UNKNOWN OWNERS; and NONRECORD | ) | |
| CLAIMANTS, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Lynn Weaver Boyle, |
| (Martha Gould, Defendant-Appellant). | ) | Judge Presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's order confirming the judicial sale of defendant-appellant's residence and the court's order denying her motion to reconsider.

¶ 2    Defendant, Martha Gould, appeals from orders of the circuit court confirming the judicial sale of her residence on the motion of plaintiff, Fifth Third Bank, National Association, and denying her motion to reconsider the confirmation of the judicial sale. On appeal, Martha contends that the court erred in confirming the judicial sale where justice was not otherwise done because Fifth Third Bank, National Association, violated federal regulations when it proceeded to a judicial sale despite her submitting a complete loss mitigation application. For the reasons that follow, we affirm the circuit court's orders.

¶ 3                                I. BACKGROUND

¶ 4                                A. Regulation X

¶ 5    This case involves section 1024.41 of Title 12 of the Code of Federal Regulations (12 C.F.R. § 1024.41 (2023)), which is known as Regulation X (*id.* § 1024.1). Regulation X is a series of regulations that implement the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. § 2601 *et seq.* (2018)). 12 C.F.R. § 1024.1 (2023). One of Regulation X's core protections is prohibiting mortgage servicers from engaging in "dual-tracking," where they participate in foreclosure proceedings while simultaneously working with borrowers to avoid foreclosure. *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016).

¶ 6    To prohibit dual-tracking, section 1024.41 provides various requirements of federal loan servicers, including regulations concerning the evaluation of a borrower's loss mitigation application. Among the requirements, if a servicer receives an application 45 days or more before a foreclosure sale, it must promptly review the application to determine if the application is complete and provide notice within five business days to the borrower of the application's completeness or incompleteness. 12 C.F.R. § 1024.41(b)(2) (2023). If the servicer determines the application is incomplete, it must provide notice to the borrower of the information required to

make the application complete and a reasonable time period in which the borrower has to respond. *Id.* Once the borrower submits the additional information, that application is deemed facially complete. *Id.* § 1024.41(c)(2)(iv). If the servicer later determines that further information or corrections to previously submitted documents are required from the borrower, the servicer may request such information but the loss mitigation application is still considered complete "until the borrower is given a reasonable opportunity to complete the application." *Id.* "If the borrower completes the application within this period, the application shall be considered complete as of the date it first became facially complete" for purposes of section 1024.41(g). *Id.*

¶ 7     When a borrower submits a complete loss mitigation application, he or she becomes entitled to certain foreclosure protections. Under section 1024.41(g):

> "If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
>      (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
>      (2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option." *Id.* § 1024.41(g).

That notice pursuant to paragraph (c)(1)(ii) must be in writing and state:

"the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section." *Id.* § 1024.41(c)(1)(ii).

However, according to Regulation X, "[n]othing in [section] 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." *Id.* § 1024.41(a).

¶ 8                                    B. The Foreclosure Litigation

¶ 9      With that brief overview of Regulation X, we now turn to the present case. In 2009, Martha and her brother, Luis Payan, executed a note secured by a mortgage held by Fifth Third Mortgage Company for a residence located in Chicago. By January 2022, Fifth Third Bank, National Association, was the successor-in-interest to Fifth Third Mortgage Company (hereinafter referred to as Fifth Third). The following month, after Martha and Payan had failed to make their monthly mortgage payments for four months, Fifth Third filed a foreclosure complaint against them as well as James E. Gould, the United States of America – Secretary of Housing and Urban Development (HUD), Unknown Owners and Nonrecord Claimants. Fifth Third included James as a defendant because he was allegedly the spouse of Martha and had a potential interest in the property. Fifth

Third also included HUD as a defendant because HUD held a subordinate mortgage on the property.

¶ 10    After Fifth Third obtained service on Martha, Payan, James and HUD, Martha and HUD filed appearances while Payan and James did not. In September 2022, after Martha filed an answer to Fifth Third's complaint, Fifth Third filed various motions to complete the foreclosure process. Fifth Third moved to dismiss Unknown Owners and Nonrecord Claimants as defendants, moved for summary judgment against Martha and HUD, and moved for a default order against Payan and James. Additionally, Fifth Third moved for the appointment of the Judicial Sales Corporation as the special selling officer and moved for an entry of a judgment of foreclosure and sale.

¶ 11    In January 2023, the circuit court granted Fifth Third's motion to dismiss Unknown Owners and Nonrecord Claimants as defendants, granted Fifth Third's motion for summary judgment in its favor and against Martha and HUD, granted Fifth Third's motion for an order of default against Payan and James, and granted Fifth Third's motion for a judgment of foreclosure and sale against Martha, HUD, Payan and James. In the court's order granting the judgment of foreclosure and sale, it appointed the Judicial Sales Corporation as the selling officer to sell the property at a public auction. On April 27, 2023, the judicial sale occurred, and Fifth Third was the highest bidder for the property. Thereafter, Fifth Third filed a motion to confirm the judicial sale.

¶ 12    In response to Fifth Third's motion to confirm the judicial sale, Martha objected and argued that she submitted a complete loss modification application to Fifth Third in December 2022 and March 2023 but never received a denial letter or instructions on how to appeal any such denial. Martha posited that Fifth Third's actions, or lack thereof, violated section 1024.41(g) of Title 12 of the Code of Federal Regulations (12 C.F.R. § 1024.41(g) (2023)). Because Fifth Third violated section 1024.41(g), Martha contended that justice was not otherwise done under section 15-

1508(b)(iv) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1508(b)(iv) (West 2022)), and asserted that Fifth Third's motion should be denied.

¶ 13    Martha attached to her objection multiple exhibits, including a timeline of events concerning her loss mitigation efforts and an affidavit attesting to those efforts. According to Martha's timeline, on December 21, 2022, Martha submitted a loss mitigation application to Fifth Third. Martha included as an exhibit her signed "Mortgage Assistance Application," which appeared to be faxed to Fifth Third on December 21, 2022. At the end of January 2023, Martha received a phone call from "Deana" at Fifth Third, who instructed Martha to call Fifth Third back. On February 7, 2023, Martha spoke to Deana, who directed Martha to submit an updated loss mitigation application because Martha's initial application had "insufficient information" despite Martha not receiving anything in writing from Fifth Third alerting her to the insufficiency. On March 5, 2023, Martha e-mailed the updated loss mitigation application to Fifth Third's loss mitigation e-mail address. Martha included as an exhibit her March 5, 2023, e-mail to Fifth Third's loss mitigation department along with the updated loss mitigation application, which was attached to the e-mail. Three weeks later, Martha received a phone call from "Vonna" at Fifth Third, who instructed Martha to submit additional income information for her, Payan and James. The following day, March 28, 2023, Martha did so by e-mailing the supplemental documentation to Fifth Third's loss mitigation department. Martha included as an exhibit her March 28, 2023, e-mail to Fifth Third's loss mitigation department along with the supplemental documentation, which were attached to the e-mail.

¶ 14    On April 10, 2023, Martha received a call from Vonna at Fifth Third, who asked for additional employment information for Payan. After providing that information verbally, Vonna told Martha that she would be in touch if Fifth Third needed anything else. A week later, an

unidentified employee at Fifth Third called Martha and asked for a copy of James' driver's license and social security card. Martha told the employee that James lost his social security card years earlier, and the employee stated that James' W-2 form and insurance card were sufficient substitutes. The following day, April 18, 2023, Martha e-mailed the supplemental documentation to Fifth Third's loss mitigation department. Martha included as an exhibit her April 18, 2023, e-mail to Fifth Third's loss mitigation department along with the supplemental documentation, which were attached to the e-mail.

¶ 15 Less than a week later, "Diana" from Fifth Third called Martha requesting James' social security card. Martha relayed the previous conversation she had with an employee of Fifth Third regarding substitute documentation, and Diana verified that Fifth Third had received the documentation and it was sufficient. Two days later, Diana called Martha and left a message asking Martha to call back. Martha tried calling back multiple times, but could not get in touch with anyone or leave a message. On May 4, 2023, Martha called Fifth Third seeking an update on her application. However, she was told by an unidentified Fifth Third employee that her house had already been sold at a judicial sale. The employee told Martha that her "application was not approved due to insufficient information received," though the employee could not give her specifics. The following day, Martha called Fifth Third again seeking further clarity on the situation, but an unidentified Fifth Third employee only told her that something had been mailed to her the week prior. Martha maintained to the Fifth Third employee that she had not received anything from Fifth Third. In Martha's affidavit attesting to her loss mitigation efforts with Fifth Third, she also attested to the authenticity of the correspondences attached as exhibits.

¶ 16 Fifth Third filed a reply in support of its motion to confirm the judicial sale, arguing that, based on Martha's exhibits, she never submitted a complete loss mitigation application despite

being repeatedly told by Fifth Third that the application was incomplete and insufficient. In turn, Fifth Third contended that it did not violate section 1024.41(g). Fifth Third further posited that Martha failed to allege any injustice with the judicial sale process itself, and thus, she had failed to meet her burden to establish a basis to deny confirmation of the judicial sale.

¶ 17    On July 26, 2023, following a hearing on Fifth Third's motion to confirm the judicial sale, the circuit court entered a written order confirming the sale. There is no report of proceedings from this hearing, but in the court's written order, among several findings, it found that "justice was done" and ordered an *in rem* deficiency judgment of $145,314.66.

¶ 18    Thereafter, Martha filed a motion to reconsider the circuit court's order confirming the judicial sale, relying on essentially the same arguments raised in her objection to Fifth Third's motion to confirm the judicial sale. Martha also attached the same exhibits she had attached to her objection. Following argument on Martha's motion, the circuit court entered an order denying Martha's motion to reconsider. There is no report of proceedings from the parties' argument on Martha's motion to reconsider.

¶ 19    This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21    Martha principally contends that the circuit court erred in confirming the judicial sale of her property where justice was not otherwise done according to section 15-1508(b)(iv) of the Foreclosure Law (735 ILCS 5/15-1508(b)(iv) (West 2022)) because Fifth Third violated Regulation X by proceeding to a judicial sale of her property while she had a pending complete loss mitigation application.

¶ 22    Under section 15-1508(b) of the Foreclosure Law (*id.* § 15-1508(b)), following a hearing on a motion to confirm a judicial sale: "Unless the court finds that (i) a notice required in

accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale." Upon a party's motion with proper notice, section 15-1508(b) imposes a mandatory duty on the circuit court to conduct a hearing on whether to confirm a judicial sale, and following the hearing, to confirm the sale unless any of the four exceptions are present. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008). Martha relies on the injustice ground. What creates an injustice under section 15-1508(b)(iv) is not defined by statute. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 19. "Long before the codification of the Foreclosure Law, courts have retained the power to vacate a sale where unfairness is shown that is prejudicial to an interested party." *Id.* Thus, the injustice ground "appears to merely codify the long-standing discretion of the courts of equity to refuse to confirm a judicial sale." *Id.*

¶ 23 The injustice ground cannot be invoked to protect someone against his or her own negligence. *Id.* Rather, decisions invoking this ground as a basis to deny the confirmation of a judicial sale have "balanced the interests of the parties and exercised its equitable authority to vacate a sale, applying traditional equitable principles." *Id.* ¶ 20. And so, "the justice provision *** acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment, based on traditional equitable principles." *Id.* ¶ 25. To sufficiently invoke the injustice prong, the party challenging the sale has the burden to show "that sufficient grounds exist to disapprove of a judicial sale." *Bayview Loan Servicing, LLC v. 2010 Real Estate Foreclosure, LLC*, 2013 IL App (1st) 120711, ¶ 32. The party challenging the sale must show "either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has

equitable defenses that reveal he was otherwise prevented from protecting his property interests." *McCluskey*, 2013 IL 115469, ¶ 26.

¶ 24    Although Martha argues that we should review her contention on appeal *de novo* because the circuit court allegedly erred in applying Regulation X, it is well settled that the circuit court has broad discretion in rejecting or confirming a judicial sale. *Lewis*, 229 Ill. 2d at 178. As such, the court's decision to confirm a judicial sale will not be disturbed absent an abuse of that discretion. *Id*; see also *Eastern Savings Bank, FSB v. Andrews-Lewis*, 2023 IL App (1st) 220413, ¶¶ 13-14 (rejecting a defendant's argument that review of the circuit court's decision to confirm a judicial sale should be *de novo* because the court allegedly made a mistake in applying the law where it was well settled that review of the court's decision to confirm a judicial sale was for an abuse of discretion). The court abuses its discretion where its decision is unreasonable, arbitrary or fanciful, or where no reasonable person would agree with the decision. *Haage v. Zavala*, 2021 IL 125918, ¶ 40. The court also abuses its discretion where its ruling relies on a legal error. *Andrews-Lewis*, 2023 IL App (1st) 220413, ¶ 14.

¶ 25    In arguing that justice was not otherwise done, Martha posits that Fifth Third violated various provisions of section 1024.41 of Title 12 of the Code of Federal Regulations (12 C.F.R. § 1024.41 (2023)). Martha specifically invokes section 1024.41(f)—which details a prohibition on foreclosure referrals—and section 1024.41(g)—the prohibition on foreclosure sales, and she asserts that she submitted a complete loss mitigation application to Fifth Third yet never received a written denial letter. Martha further asserts that, even if the application was incomplete, Fifth Third was required, but failed, to timely provide her written notice of what information was missing to complete the application and provide her reasonable time to provide the missing documentation. This latter argument touches upon a servicer's obligations under section

1024.41(b). *Id.* § 1024.41(b) (2023) (detailing the servicer's obligations upon "[r]eceipt of a loss mitigation application").

¶ 26    Admittedly, based on the exhibits that Martha attached to her objection to Fifth Third's motion to confirm the judicial sale, she presented a compelling case that she was in the process of submitting a loss mitigation application to Fifth Third and may have even submitted a complete or facially complete application more than 37 days before the judicial sale. See 12 C.F.R. § 1024.41(g) (2023) (providing that Regulation X's prohibition on foreclosure sales is initiated when "a borrower submits a complete loss mitigation application *** more than 37 days before a foreclosure sale" unless certain circumstances are present); see also *id.* §§ 1024.41(b)(1) (defining a "[c]omplete loss mitigation application"); 1024.41(c)(2)(iv) (defining a "[f]acially complete [loss mitigation] application"). Likewise, Martha's exhibits potentially demonstrated that Fifth Third did not provide her timely notices in response to her submissions. See *id.* § 1024.41(b).

¶ 27    Despite the compelling objection from Martha based on her exhibits, the circuit court confirmed the judicial sale. Although there is a written order confirming the judicial sale, the order perfunctorily states that "justice was done" without giving insight into the court's reasoning. And therein lies the problem for Martha. The record on appeal does not include a report of proceedings from the confirmation hearing, either in the form of a verbatim transcript or an appropriate substitute (see Ill. S. Ct. R. 323 (eff. July 1, 2017)). Martha, as the appellant, bears the burden of providing the reviewing court with a sufficiently complete record to allow our review of her claimed errors. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). "Without an adequate record preserving the claimed error, the reviewing court must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law." *Id.* at 157.

¶ 28    Absent a report of proceedings from the confirmation hearing, we cannot determine how the circuit court considered Martha's objection to the sale, specifically as it related to her exhibits and Regulation X, and ultimately, we cannot determine why the court confirmed the sale. Given the absence of the court's reasoning for confirming the sale, we have no basis to find that it acted arbitrarily or unreasonably by doing so. See *CitiMortgage, Inc. v. Bermudez*, 2014 IL App (1st) 122824, ¶ 69. And even though Martha claims that the court misapplied Regulation X when confirming the sale, we similarly cannot resolve that allegation absent a report of proceedings demonstrating how the court considered Regulation X. See *GMAT Legal Title Trust 2013-1 v. Nestor*, 2018 IL App (1st) 171456-U, ¶¶ 15-20 (where the appellants failed to include a report of proceedings from the hearing on their motion to vacate a judgment of foreclosure and review of a ruling to vacate a judgment of foreclosure was for an abuse of discretion, "[t]he absence of any explanation for the circuit court's ruling *** thwart[ed] [the appellants'] assertion that the circuit court misapplied the law regarding section 1024.41(g) of Regulation X").

¶ 29    Nevertheless, based on Martha's compelling objection, perhaps the most equitable course below would have been to hold an evidentiary hearing on whether Martha submitted a complete loss mitigation application to Fifth Third more than 37 days before the judicial sale. The hearing contemplated by section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2022)), which occurred in this case, is only a limited inquiry into the judicial sale. *CitiMortgage Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 52. "Although an extended evidentiary hearing after each foreclosure sale is not required, an evidentiary hearing may be conducted when the defendant presents allegations and evidence that establish the sale was not in conformity with section 15-1508 of the Foreclosure Law." *Id.* For example, in *Deutsche Bank National Trust Co. v. Cortez*, 2020 IL App (1st) 192234, ¶ 10, a borrower objected to the confirmation of a judicial sale based

on his assertion that he had entered into a loan modification agreement with the mortgagee. Over the borrower's objection, the circuit court confirmed the judicial sale, and he appealed. *Id.* ¶ 13. The appellate court concluded that, based on the borrower's objection to the confirmation of the judicial sale, "there [was] a question as to whether the parties entered into a loan modification agreement" and "the equitable result is to, at a minimum, conduct an evidentiary hearing on the issue." *Id.* ¶ 25.

¶ 30    Turning back to the present case, although the most equitable course below might have been to hold an evidentiary hearing, there is no indication from the record that Martha sought an evidentiary hearing. It is entirely possible that the issue of an evidentiary hearing was raised during the confirmation hearing, but, again, the lack of a report of proceedings from that hearing means we simply do not know. Regardless, we will not find the circuit court abused its discretion by failing to *sua sponte* hold an evidentiary hearing. See *Norman v. U.S. Bank National Ass'n*, 2020 IL App (1st) 190765, ¶ 38. And notably, on appeal, Martha has not argued that an evidentiary hearing was warranted. Consequently, given the state of the record, we must presume the circuit court had a sufficient factual basis for its confirmation of the judicial sale and that its confirmation order conforms with the law. See *Corral*, 217 Ill. 2d at 157. We therefore have no choice but to find that the court properly exercised its discretion in confirming the judicial sale.

¶ 31    Lastly, in Martha's notice of appeal, she indicated that she would seek review of the circuit court's denial of her motion to reconsider. Martha has not made any explicit arguments concerning the court's ruling on her motion to reconsider in her brief, which normally results in forfeiture of that argument on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Forfeiture aside, because we have no basis to find the court abused its discretion in confirming the judicial sale and Martha's motion to reconsider relied on the same arguments as in her objection to Fifth Third's motion to

confirm the judicial sale, we axiomatically have no basis to find that the court erred in denying her motion to reconsider. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 21.

¶ 32                                        III. CONCLUSION

¶ 33     For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 34     Affirmed.