# Illinois Official Reports

## Appellate Court

---

### *BMO Harris Bank, N.A. v. Wolverine Properties, LLC*,
### 2015 IL App (2d) 140921

---

| | |
|---|---|
| Appellate Court Caption | BMO HARRIS BANK, N.A., f/k/a Harris N.A., as Assignee of Amcore Bank N.A., Plaintiff-Appellant, v. WOLVERINE PROPERTIES, LLC; RICHARD J. CALDARAZZO; KURT F. BECKER; TWIN OAKS VENDING, INC.; KURICH MUSIC, INC.; ARETE 3, LTD.; AMCORE INVESTMENT GROUP, N.A., as Trustee u/t/a 03-14944; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-14-0921 |
| Filed | August 20, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-L-4819; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kurt M. Carlson and Martin J. Wasserman, both of Carlson Dash, LLC, of Chicago, for appellant.<br><br>Robert G. Black, of Law Offices of Robert G. Black, of Naperville, Frank J. DeSalvo, of Law Offices of DeSalvo & Cowden, P.C., of Wheaton, and Steven B. Bashaw, of Steven B. Bashaw, P.C., of Lisle, for appellees. |

Panel                          JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    In August 2013, plaintiff, BMO Harris Bank, N.A., f/k/a Harris, N.A., as assignee of Amcore Bank N.A. (BMO), *as mortgagee*, sought a judgment of foreclosure in the amount of approximately $3.5 million. That request did not include an approximately $500,000 tax payment that it had made in July 2013. The trial court granted the judgment. Later, the property went to sale, and BMO, *as purchaser*, was the sole bidder, bidding an amount equaling the judgment amount plus subsequently accruing costs, leaving no deficiency (which is calculated by the sale price minus the judgment amount and minus the costs accruing after the judgment but before the sale). BMO, however, sought to collect a deficiency judgment for the prejudgment tax payment, to be collected from the defendant-guarantors, Richard J. Caldarazzo and Kurt F. Becker.

¶ 2    At a hearing to confirm the sale, pursuant to section 15-1508 of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1508 (West 2014)), the trial court denied the request for the deficiency judgment. The court stated that, because BMO had not sought to include the tax payment in the judgment of foreclosure, it could not subsequently collect the payment as a deficiency against the sale proceeds. Therefore, BMO could collect the tax payment only by having the sale "set aside," *i.e.*, not confirmed, so that a *new* sale–stemming from a judgment based on an *accurate* accounting, including the tax payment–could take place. We infer that the court concluded that, had an accurate accounting, including the tax payment, been presented prior to the sale, the sale price likely would have been different.

¶ 3    The court performed an analysis under section 15-1508(b) of the Foreclosure Law, which sets forth the four circumstances under which a sale may be set aside. 735 ILCS 5/15-1508(b) (West 2014). The court found that none of the four circumstances, including injustice, was present. Therefore, it confirmed the sale and ruled that there was no deficiency. BMO appeals, arguing that section 15-1508(b) did not apply, because it was not seeking to set aside the sale. It argues that the correct analysis was a simple application of section 15-1512, which, *in its view*, states without qualification as to timing or circumstance that a mortgagee may recover for payment of real estate taxes. 735 ILCS 5/15-1512 (West 2014). For the reasons that follow, we reject BMO's argument and affirm the trial court.

¶ 4                          I. BACKGROUND

¶ 5    The instant case concerns three parcels of real estate, each of which is located at 657 Wolverine Drive in Aurora. One parcel consists of 15 acres of vacant land, and the remaining two parcels contain a commercial building. In April 2008, the owners of the real estate, defendants Wolverine Properties, LLC, Twin Oaks Vending, Inc., and Kurich Music, Inc., executed promissory notes in the principal amounts of $1,629,279.33, $662,301.18, and

$463,122.07. The notes were secured by multiple mortgages on the real estate. In addition, Caldarazzo and Becker executed personal guaranties on the indebtedness. By April 2010, the loans had matured, and Wolverine, Twin Oaks, and Kurich were in default.

¶ 6 On February 23, 2011, BMO filed an amended foreclosure complaint against, among others, Wolverine, Twin Oaks, and Kurich, as well as Caldarazzo and Becker (hereinafter, collectively referred to as defendants), wherein it sought to foreclose on the mortgages and obtain a judgment on the notes and the guaranties. In the complaint, BMO alleged separate breach-of-contract claims against Caldarazzo and Becker. BMO argued that Caldarazzo and Becker had breached their contractual duties, as set forth in the guaranties, to "absolutely and unconditionally guarant[y] full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." Following answers and motions not at issue here, on January 10, 2013, BMO moved for summary judgment on all counts. The affidavits of proof in support of the motion sought principal, interest, and nonattorney-related charges accrued through October 31, 2012.

¶ 7 On July 15, 2013, before the trial court set the hearing date on BMO's motion, BMO paid $470,341 in real estate taxes on the three parcels. However, BMO did *not* amend its motion for summary judgment or its affidavits of proof in support thereof to reflect the $470,341 tax payment. The tax payment and BMO's subsequent failure to timely document it would come to form the central controversy in this appeal.

¶ 8 On July 25, 2013, the trial court set for hearing BMO's motion for summary judgment. On August 9, 2013, the trial court heard and granted the motion, but, as it was not presented with evidence of the $470,341 tax payment, the court did not consider it. The judgment of foreclosure was for $3,539,797. The court, *sua sponte*, reserved entry of a monetary judgment against Caldarazzo and Becker should a sale fail to satisfy the judgment of foreclosure.

¶ 9 After the judgment of foreclosure, but prior to the judicial sale, BMO accrued and incurred the following entitlements and expenses: (1) $164,964.26 in interest on the debt; and (2) $1,800 for a presale appraisal. Thus, *aside from the $470,341 tax payment*, the total amount owed to BMO was $3,706,561.65 ($3,539,797.39 + $164,964.26 + $1,800). BMO sought amendment of the judgment of foreclosure so that it could conduct the sale in two parts, but it did *not* seek to amend the judgment amount to include the tax payment.

¶ 10 On February 13, 2014, pursuant to the August 9, 2013, judgment of foreclosure, the Du Page County sheriff conducted the judicial sale in two parts. BMO was the sole bidder, at a total of $3,651,097. Thus, the deficiency was $55,464.65 ($3,706,561.65 - $3,651,097). *If* the $470,341 tax payment had been counted as part of the judgment of foreclosure, the deficiency *would have been $525,805.65* (3,706,561.65 + $470,341 - $3,651,097). This is the amount for which BMO would seek to be reimbursed.[1]

---

[1]BMO appears to concede on appeal that, if it is not entitled to recover the $470,341 tax payment, it is not entitled to *any* deficiency (not even the aforementioned $55,464.65). BMO does not discuss every detail of the expenses sought below, and we recognize that the figures presented by the parties do not "square up" mathematically. As such, we concentrate on the presented question of whether BMO should recover its tax payment, which, henceforth, for ease, we describe as $500,000.

¶ 11 On March 4, 2014, BMO moved to have the sale confirmed pursuant to section 15-1508. 735 ILCS 5/15-1508 (West 2014). In addition to confirmation of the sale, BMO sought a deficiency judgment for $525,805.65, which included the tax payment. (It also sought $81,408.61 in additional attorney fees and costs not at issue on appeal.) This was the first time that BMO requested recovery for the tax payment. BMO argued that it was entitled to recover the tax payment, because section 15-1512 states that proceeds and surpluses from judicial sales "shall" be distributed in a certain order, the second of which is reimbursement for "the reasonable expenses of securing possession before sale" including "payment of taxes." 735 ILCS 5/15-1512(b) (West 2014). BMO noted that section 15-1512 did not differentiate between taxes paid *prior to the judgment of foreclosure* and taxes paid *after the judgment of foreclosure* but still before the judicial sale. Finally, BMO reminded the court that it retained jurisdiction to amend any previous order (*i.e.*, including the judgment of foreclosure) to include the taxes. BMO requested that the deficiency judgment be entered against Caldarazzo and Becker.

¶ 12 Defendants responded that, in section 15-1508 proceedings to confirm a sale and assign a deficiency against the judgment (if any), only costs incurred *between* the judgment of foreclosure and the sale are recoverable. 735 ILCS 5/15-1508 (West 2014). Because BMO paid the taxes *before* the judgment of foreclosure, the tax payments were not recoverable.[2] Defendants also argued that they had relied on the accuracy of the judgment amount at the sale and that altering the amount of indebtedness after the sale would be unfair. Specifically, defendants stated that Caldarazzo had been present at the sale and that, when he saw that the bid equaled the judgment amount plus interest, he knew that there would be no deficiency and, therefore, did not bid.

¶ 13 The trial court confirmed the sale and ruled that BMO was not entitled to recover for the tax payment. It found that there was no deficiency and that, therefore, nothing was owed on the guaranties. In explaining its ruling, the court stated that the instant fact pattern presented an issue of first impression. However, citing to the broad principles set forth in *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, it stated that "the deficiency has to be decided on the judgment amount that went to the foreclosure sale." The tax payment was *not* included in the judgment of foreclosure, and the judgment of foreclosure dictated the terms of the sale. The inference to be drawn from the court's statements is that, in order for BMO to recover for the tax payment, the judgment of foreclosure would need to be amended to include the tax payment, and, because the judgment of foreclosure dictated the terms of the sale, the sale based on the original judgment of foreclosure would have to be set aside. However, in the court's view, none of the four circumstances set forth in section 15-1508 that would justify setting aside a sale was present. 735 ILCS 5/15-1508 (West 2014) (the court *shall* confirm the sale *unless* (1) notice was not given; (2) the terms were unconscionable; (3) the sale was fraudulently conducted; or (4) justice was otherwise not done). As to Caldarazzo and Becker, the court stated that they could be liable only for the amount of the deficiency, which, by the court's calculation, was zero. They could not be separately liable for the tax payment.

---

[2]Defendants would later argue that, pursuant to *Bank of America, N.A. v. Higgin*, 2014 IL App (2d) 131302, even real estate taxes paid between the judgment of foreclosure and the sale are not recoverable. We need not reach this issue to resolve this appeal. We do note, however, that *Higgin* involved the *post*-sale payment of back taxes by the *purchaser*, not the presale payment of taxes by the mortgagee.

- 4 -

Although an order confirming a sale is considered final and appealable (*U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 21), the court also ensured appellate jurisdiction with a written finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15                                    A. Overview

¶ 16     On appeal, BMO argues that the trial court did not perform the correct analysis. In its view, the section 15-1508(b) analysis to determine whether the sale could be set aside bore no application to this case, because BMO did not seek to set aside the sale. Rather, it sought a deficiency judgment. We acknowledge that, ordinarily, it is a *borrower* who seeks to "set aside" a not-yet-official sale, *i.e.*, to prevent confirmation. See, *e.g.*, *McCluskey*, 2013 IL 115469, ¶¶ 24-25. Here, by contrast, the trial court considered whether the judgment should be set aside on behalf of the *lender/purchaser*, which has made an irrevocable offer to purchase the property at a certain price. See, *e.g.*, *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 181 (2008). In this respect, the trial court's section 15-1508(b) analysis was unusual. Nevertheless, for the reasons that follow, we agree that the trial court's analysis under section 15-1508(b) was correct and that BMO suffered no injustice.

¶ 17     BMO posits that the correct analysis would have been a simple application of section 15-1512, which, *in its view*, states without qualification as to timing or circumstance that a mortgagee may recover for payment of real estate taxes. 735 ILCS 5/15-1512 (West 2014). Although our section 15-1508 discussion is dispositive of the case, we will briefly explain why section 15-1512 does not apply here. *Id.*

¶ 18     Finally, BMO argues that, although it cannot obtain a $500,000 deficiency judgment against the borrowers, it should be able to do so against the guarantors. We reject this argument, because BMO has presented no authority for its assertion that the guarantors can be liable for a different amount than the borrowers.

¶ 19                    B. The Trial Court's Section 15-1508 Analysis

¶ 20     We begin by setting forth the statutory and black-letter law concerning the recovery of real estate taxes, the foreclosure process, and the award of a deficiency judgment. "All monies advanced by the mortgagee in accordance with the terms of a mortgage to *** preserve or restore the mortgaged real estate *** shall be a lien from the time the mortgage is recorded." 735 ILCS 5/15-1302(b)(5) (West 2014). "During a foreclosure, and any time prior to sale, a mortgagee or any other lienor may pay *** (ii) when due[,] installments of real estate taxes ***." 735 ILCS 5/15-1505 (West 2014). In its complaint for foreclosure, a plaintiff-mortgagee may request a judgment for attorney fees, costs, and expenses. 735 ILCS 5/15-1504(a)(3)(T)(vi) (West 2014). Indeed, a request for foreclosure is deemed to mean that the plaintiff requests an accounting of the amounts due and owing. 735 ILCS 5/15-1504(e)(1) (West 2014). When a plaintiff seeks the inclusion of fees, costs, and expenses in the judgment of foreclosure, its complaint is deemed to include allegations that, "in order to protect the lien of the mortgage, it may become necessary for plaintiff to pay taxes and assessments which have been or may be levied upon the mortgaged real estate" and that, "under the terms of the mortgage, any money so paid or expended will become an additional

indebtedness secured by the mortgage [with interest]." 735 ILCS 5/15-1504(d)(4), (d)(6) (West 2014). If the defendant-mortgagor does not pay the amount set forth in the foreclosure judgment, the mortgaged real estate will be sold as directed by the court, to satisfy the amount due to the plaintiff *as set forth in the judgment* (with interest). 735 ILCS 5/15-1504(e)(3) (West 2014). "Upon the entry of the judgment of foreclosure, all rights of a party in foreclosure against the mortgagor provided for in the judgment of foreclosure *** shall be secured by a lien on the mortgaged real estate, which lien shall have the same priority as the claim to which the judgment relates and shall be terminated upon confirmation of [the] judicial sale." 735 ILCS 5/15-1506(i)(1) (West 2014). Also upon the entry of the judgment of foreclosure, the rights in the real estate subject to the judgment *shall be solely as provided for in the judgment*. 735 ILCS 5/15-1506(i)(2) (West 2014). The real estate shall be sold at a sale on such terms and conditions as shall be specified in the judgment of foreclosure. 735 ILCS 5/15-1507(b) (West 2014).

¶ 21　　Following the sale, upon motion, the court shall conduct a hearing to confirm the sale and enter a deficiency judgment, if necessary. 735 ILCS 5/15-1508(b), (e) (West 2014). "Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15-1508(b) (West 2014). Additionally, the confirmation order may "approve the mortgagee's fees and costs arising *between* the entry of the judgment of foreclosure and the confirmation hearing, those costs and fees to be allowable to the same extent provided in the note and mortgage and in Section 15-1504." (Emphasis added.) 735 ILCS 5/15-1508(b)(1) (West 2014). "In any order confirming a sale pursuant to the judgment of foreclosure, the court shall also enter a personal judgment for deficiency against any party ***." 735 ILCS 5/15-1508(e) (West 2014). "Except as otherwise provided in [the Foreclosure Law], a judgment may be entered for any balance of money that may be found due to the plaintiff, over and above the proceeds of the sale or sales ***." *Id.* "[T]he judgment stands satisfied to the extent of the sales price less expenses and costs." 735 ILCS 5/15-1508(f) (West 2014). "[I]f the sale of the mortgaged real estate fails to produce a sufficient amount to pay the amount found due, the plaintiff may have a personal judgment against any party in the foreclosure indicated as being personally liable therefor ***." 735 ILCS 5/15-1504(f) (West 2014).

¶ 22　　Turning back to the instant case, defendants' position, and the position taken by the trial court, is as follows. BMO *could have* sought to include the tax payment, made prior to the judgment of foreclosure, as part of the amount due in the judgment. See, *e.g.*, 735 ILCS 5/15-1302(b)(5), 15-1504(d)(4), 15-1505 (West 2014). Although we cannot be certain, BMO most likely would have succeeded in showing that the payment was necessary to protect the lien on the mortgage and that the terms of the mortgage allowed for the payment to become an additional indebtedness on the property. 735 ILCS 5/1504(d)(4), (d)(6) (West 2014). However, BMO did *not* seek to include the tax payment in the judgment of foreclosure.

¶ 23　　Although the alleged error by omission was made early on–at the time of the judgment of foreclosure–the trial court focused its analysis on a later stage, analyzing the circumstances under which a trial court may refuse to confirm a sale. In support of this leap, defendants stress that the sheriff conducted the sale *according to the judgment of foreclosure*. 735 ILCS 5/15-1507(b) (West 2014). The notice regarding the upcoming sale set forth a judgment

amount that did not include the tax payment. We note that, upon receiving such notice, defendants, as the debtors, could have redeemed the property by paying the amount set forth in the foreclosure judgment, which did not include the tax payment. Therefore, defendants', and the trial court's, view seems to be that, because the judgment of foreclosure influenced the outcome of the sale, then, hypothetically, an amended judgment of foreclosure that included the tax payment would lead to different sale results. *Ergo*, one cannot amend the judgment of foreclosure without setting aside the sale.

¶ 24    There *is* authority to support the trial court's reasoning beyond defendants' citation to section 15-1507(b), which states that the sheriff relies upon the terms set forth in the judgment of foreclosure in conducting the sale. *Id.* Again, section 15-1504(e)(3) states that the amount due to the plaintiff is *as set forth in the judgment* (with interest). 735 ILCS 5/15-1504(e)(3) (West 2014). Further, section 15-1506(i)(2) states that the rights in the real estate subject to the judgment of foreclosure *shall be solely as provided for in the judgment of foreclosure*. 735 ILCS 5/15-1506(i)(2) (West 2014). Moreover, under common law, the party conducting the sale has a duty to secure the highest possible bid so that the debt is satisfied as far as possible. *Davison v. Krejci*, 307 Ill. App. 514, 518-19 (1940). The party conducting the sale may prevent a sale at a grossly inadequate price by fixing the reasonable price in advance. *Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279, 290-91 (1937). Even though one may first assume that a reasonable minimum bid protects the interests of the lender, such that the debt is satisfied, it also protects the interests of the debtor, such that there is no deficiency judgment. *Id.*; see *Members Equity Credit Union v. Duefel*, 295 Ill. App. 3d 336, 339 (1998). This common law authority is relevant because the entity conducting the sale relies upon the judgment of foreclosure in gauging whether its procedures and guidelines in conducting the sale are likely to secure a bid that will satisfy the court-determined debt, *i.e.*, the judgment amount. All of this authority, both statutory and common law, comes together to establish that, generally, the amount set forth in the judgment of foreclosure influences the sale process and, thus, the ultimate sale price.

¶ 25    Here, without the benefit of hindsight, it is impossible to know with certainty whether a different judgment amount would have led to a different sale price. The notice of sale did not include minimum- or opening-bid guidelines. We do not see that information anywhere in the record or know whether it was ever presented to the trial court, but this informational shortfall weighs against BMO, because BMO has the burden to show that it is entitled to a deficiency judgment. 735 ILCS 5/15-1508 (West 2014). The foregoing authority and practice trends, as well as BMO's failure to produce any evidence to show that the (approximate) $3.5 million judgment amount did *not* influence the (approximate) $3.5 million sale price, leaves intact the causal link between the judgment amount and the sale price such that the trial court stood on firm ground when reasoning that one cannot be manipulated without impacting the other.

¶ 26    Having established that the trial court applied the correct analysis, we now evaluate whether the *outcome* of that analysis constituted an abuse of discretion. The trial court's decision regarding whether a sale should be confirmed or set aside is reviewed for an abuse of the limited discretion granted to it by section 15-1508. *McCluskey*, 2013 IL 115469, ¶ 19. The trial court is not given boundless discretion to set aside a sale. *Id*. Rather, it may set aside a sale *only* in the presence of one of the four circumstances set forth in section 15-1508. *Id*. The fourth circumstance, justice not otherwise done, is at issue here. It is a codification of the

court's power to vacate a sale "where unfairness is shown that is prejudicial to an interested party." *Id.* A court should not refuse to confirm a sale merely to protect an interested party " 'against the result of his own negligence.' " *Id.* (quoting *Shultz v. Milburn*, 366 Ill. 400, 405 (1937)). The injustice must be great enough to outweigh the need to establish stability in the sale process. *Id.* ¶ 25.

¶ 27 Here, the alleged prejudice to BMO is that BMO will not be reimbursed for the tax payment unless it is allowed to amend the judgment of foreclosure to include the tax payment. However, BMO presents no reason, other than its own inadvertence or mistake, why it could not have sought to include the tax payment in the original judgment of foreclosure. BMO contends that it is defendants that acted in a dilatory manner and that, if defendants had not filed a series of fruitless motions in defending against the foreclosure action, then BMO would have been able to secure the judgment of foreclosure well before it made the tax payment. We are not compelled by BMO's contention. Even if defendants' actions were dilatory, a foreclosure defendant's dilatory behavior is not an unusual obstacle. More tellingly, BMO had multiple opportunities to include the taxes in the judgment of foreclosure. BMO was granted leave to amend the judgment before the sale, and it again failed to include the tax payment. For these reasons, we cannot say that the trial court abused its discretion in determining that justice did not warrant setting aside the sale.

¶ 28 Having found that the trial court did not abuse its discretion, we discuss some of the fairness concerns raised at oral argument and explain why applying the Foreclosure Law as BMO wishes would lead to unpredictable sale processes and potentially absurd results. See, *e.g.*, *Sycamore Community Unit School District No. 427 v. Illinois Property Tax Appeal Board*, 2014 IL App (2d) 130055, ¶ 28 (a court should not interpret a statute in a manner that would lead to absurd or unjust results). In BMO's view, a mortgagee may ask for expenses, including tax payments, for the first time at the confirmation hearing so long as those expenses were incurred prior to the sale. BMO argues that there is no back-end time limitation for recovery and that it makes no difference whether a mortgagee incurs the expenses before or after the judgment of foreclosure. BMO further notes that section 15-1505 references taxes paid prior to the sale but makes no reference to a back-end time limitation for recovery of those tax payments. 735 ILCS 5/15-1505 (West 2014) ("any time prior to sale, a mortgagee *** may pay *** (ii) when due[,] installments of real estate taxes").

¶ 29 BMO's interpretation of the Foreclosure Law presents many difficulties. First, we note that, although section 15-1505 does not reference a back-end time limitation for recovery, it does not reference recovery at all. It merely states that a mortgagee *may* pay the taxes. As we have already discussed, recovery must be governed by the amount sought in the foreclosure judgment and by those costs incurred *between* the judgment and the sale. 735 ILCS 5/15-1504(e)(1), 15-1508(b) (West 2014). To hold otherwise would lead to absurd results. For example, in BMO's view, a mortgagee could obtain a $10,000 judgment (or another comparatively nominal amount) based on a default that occurred 20 years prior. After the sale, the mortgagee could then seek a deficiency judgment for *all* the expenses it had incurred in the 20-year span preceding the sale, even though the expenses were not included in the judgment amount. A mortgagee would have no incentive to seek a judgment amount that accurately reflects the amount of recovery it would ultimately seek. This is simply untenable. A request for a foreclosure judgment is a request for "an accounting [to] be taken under the direction of the court *of the amounts due and owing to the plaintiff*." (Emphasis added.) 735

ILCS 5/15-1504(e)(1) (West 2014). A plaintiff must seek to include in the judgment of foreclosure all debts sought; that is a definitive purpose of the judgment of foreclosure. *Id.*

¶ 30    BMO argues that, in practice, it can be very difficult to compartmentalize each stray expense as occurring before or after the judgment. That might be true in some cases, and, if warranted, parties can find a remedy in the general justice provision of section 15-1508. However, it is not true here. This case involves a significant prejudgment tax payment, wiping out five-plus years of back taxes and removing a tax lien on the property in an amount equal to nearly 15% of the judgment amount.

¶ 31    We are also confident in the fairness of the trial court's ruling. At first blush, the court's ruling might appear to favor the technicalities of section 15-1508 at the expense of BMO's full reimbursement, but this is not necessarily the case. Again, we can never know how the sale would have played out if the tax payment had been included in the judgment amount. If, however, the sale price again would have equaled the judgment amount plus interest, as, in practice, sale prices often do, the fairness of the court's ruling becomes more apparent. In that case, BMO, as purchaser, would have bid approximately $4 million, and BMO, as mortgagee, would not be in a position to seek a deficiency judgment for the $500,000 tax payment; the tax payment would already be covered in the $4 million purchase price. In contrast, *if* BMO were allowed to recover the $500,000 tax payment *from a debtor or guarantor–without* setting aside the $3.5 million sale, amending the judgment of foreclosure, and conducting a new sale based on the amended judgment of foreclosure–*then* BMO, by wearing the two hats of mortgagee and purchaser, would potentially gain an extra $500,000 as compared to the first scenario. It would receive the benefit of the "low" purchase price and the benefit of recovery of the tax payment.

¶ 32    We do not by this opinion imply that BMO's exclusion of the tax payment from the foreclosure judgment was intentional. We recognize that the omission was likely a simple oversight. We do not doubt that BMO sincerely feels prejudiced by the trial court's refusal to allow for recovery of the tax payment. However, because the trial court considered the justice and fairness of this case, we have herein aimed to explain why BMO has not necessarily been prejudiced. Again, because the judgment influences the sale, it is not an option to both keep the property for the $3.5 million sale price *and* receive the $500,000 tax reimbursement.

¶ 33                    C. Section 15-1512 Does Not Apply

¶ 34    Although our rationale regarding section 15-1508 is dispositive, we note that section 15-1512 has no application to this case. Again, BMO contends that the court should have applied section 15-1512, which, *in its view*, states without qualification as to timing or circumstance that a mortgagee may recover for payment of real estate taxes. 735 ILCS 5/15-1512 (West 2014). Section 15-1512 states:

"Application of Proceeds of Sale and Surplus. The *proceeds* resulting from a sale of real estate under this Article shall be applied in the following *order*:

(a) the reasonable expenses of sale;

(b) the reasonable expenses of securing possession before sale, holding, maintaining, and preparing the real estate for sale, *including payment of taxes* and other governmental charges ***;

(c) if the sale was pursuant to judicial foreclosure, satisfaction of claims in the order of priority adjudicated in the judgment of foreclosure or order confirming the sale; and

(d) remittance of any surplus to be held by the person appointed by the court to conduct the sale until further order of the court. If there is a surplus, such person conducting the sale shall send written notice to all parties to the proceeding advising them of the amount of the surplus, and that the surplus shall be held until a party obtains a court order for its distribution or until, in the absence of an order, the surplus is forfeited to the State." (Emphases added.) *Id.*

¶ 35    As such, contrary to BMO's reading, section 15-1512 does *not* state that a mortgagee is *always* entitled to reimbursement for prejudgment payments of real estate taxes. Rather, section 15-1512 discusses the *order* in which the proceeds of the sale will be applied. The distribution of any surplus requires further direction by the court. Here, there was no surplus. The sale price was approximately $3.5 million. That was the size of the pot. Nowhere does section 15-1512 state that an entitlement to recover prejudgment tax payments, if such a right did exist, can increase the size of the pot to $4 million such that BMO could, hypothetically, receive $3.5 million for the loan and *another* $500,000 for the taxes. For that reason, section 15-1512 provides no relief for BMO.

¶ 36                            D. Alternative Recovery From the Guarantors

¶ 37    Finally, BMO argues that, although it is not entitled to obtain a $500,000 deficiency judgment against the borrowers, it may still do so against the guarantors. BMO cites authority standing for the proposition that a mortgagee may pursue satisfaction of a debt from *either* the borrowers or the guarantors. See, *e.g.*, *LP XXVI, LLC, v. Goldstein*, 349 Ill. App. 3d 237, 241-42 (2004) (after the mortgagee had obtained a foreclosure judgment, it was entitled to pursue a deficiency judgment against the guarantors). In this vein, BMO asserted at oral argument that section 15-1504(f) allows for recovery from the guarantors. 735 ILCS 5/15-1504(f) (West 2014). Again, that section states: "[I]f the sale of the mortgaged real estate fails to produce a sufficient amount to pay the amount found due, the plaintiff may have a personal judgment against any party in the foreclosure indicated as being personally liable therefor ***." *Id*. Finally, BMO asserts that the indebtedness for which the guarantors will be liable is determined by the terms of the guaranties. See, *e.g.*, *McHenry Savings Bank v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 111-12 (2010).

¶ 38    We reject BMO's argument. Neither *LP XXVI* nor section 15-1504(f) states that BMO may pursue satisfaction of a debt in a different amount than that found due by the court. To the contrary, section 15-1504 states that the mortgagee may pursue a judgment against any party personally liable, such as a guarantor, for "the amount found due." 735 ILCS 5/15-1504(f) (West 2014). Section 15-1504 specifies that the amount found due is to be based on a deficiency from the sale. *Id*. ("if the sale of the mortgaged real estate fails to produce a sufficient amount to pay the amount found due"). Here, the court found no deficiency when subtracting the judgment amount from the sale price, *i.e.*, it found no amount due.

¶ 39    Additionally, BMO does not cite any special privileges set forth in the guaranties that would entitle it to collect from the guarantors a different amount than it would be entitled to collect from the borrowers. BMO quotes provisions of the guaranties that fall in the sections

entitled "miscellaneous provisions." These provisions state: "Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, *incurred in connection with the enforcement of this Guaranty*." (Emphasis added.) BMO takes these provisions out of context. These provisions do not impute unqualified liability for all BMO's expenses. The provisions do not change the scope of the guaranties; rather, they merely state that BMO may be reimbursed for costs associated with enforcing its rights under the guaranties.

¶ 40    As BMO aptly noted in its breach-of-contract claims against Caldarazzo and Becker, the guaranties state that the guarantors will be liable for the *same* amount as the borrowers. Specifically, the guaranties state that the guarantors are obligated to "absolutely and unconditionally guarant[y] full and punctual payment and satisfaction *of the Indebtedness of Borrower* to Lender, and the performance and discharge *of all Borrower's obligations* under the Note and the Related Documents." (Emphases added.) Under our plain reading, the guaranties state that the amount of the indebtedness under the guaranties is the amount that the borrowers owe or will owe the lender. BMO was not entitled to recover the $500,000 tax payment from the borrowers, and, therefore, it cannot recover that amount from the guarantors.

¶ 41                                    III. CONCLUSION
¶ 42    For the aforementioned reasons, we affirm the trial court's judgment.

¶ 43    Affirmed.