**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230325-U

Order filed August 21, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee for RCF 2 Acquisition Trust C/O U.S. Bank Trust National Association, | ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Appeal No. 3-23-0325 Circuit No. 11-CH-4265 |
| CHARLES E. KINDT; JOYCE C. KINDT; UNITED STATES OF AMERICA; COLLECTION PROFESSIONALS, INC. d/b/a J&J COLLECTIONS; UNKNOWN OWNERS and NON-RECORD CLAIMANTS, | ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Charles E. Kindt and Joyce C. Kindt, Defendants/Counter-Plaintiffs -Appellants v. Nationstar Mortgage, LLC, Counter-Defendant-Appellee). | ) ) ) ) ) | Honorable Theodore J. Jarz, Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Peterson and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  In a foreclosure action, the circuit court properly dismissed the homeowners' counterclaim and affirmative defense where there was no permanent loan modification contract, the mortgage document authorized fees, and the acceleration notice was sent via first class mail. The circuit court properly denied the homeowners' motion to vacate order approving report of sale where homeowners failed to show fraud, misrepresentation, or inability to protect their property interests. Affirmed.

¶ 2    Defendants Charles and Joyce Kindt (the Kindts) appeal the circuit court's dismissal of their third amended verified counterclaim and affirmative defense, and the denial of their motion to vacate the order approving the report of sale. They argue they never received a notice of acceleration of the mortgage loan, and Nationstar Mortgage, LLC (Nationstar) breached their contract by not permanently modifying their loan. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In August 2001, the Kindts obtained a mortgage loan from Maple Park Mortgage Company. The mortgage provided the Kindts "shall promptly discharge any lien which has priority over this security instrument." Nationstar began servicing the loan in January 2009 when the loan was already in default. In April 2010, the Kindts and Nationstar entered into a loan modification agreement. In October 2010, the Kindts again defaulted on the loan.

¶ 5    In a letter dated January 4, 2011, Nationstar informed the Kindts that it intended to enforce the provisions of the note and the mortgage. According to the letter, the Kindts had to pay the full amount of the default by February 8, 2011, otherwise Nationstar would accelerate the entire sum of both principal and interest due and invoke any remedies, including foreclosure sale of the property.

¶ 6    In September 2011, Nationstar sued to foreclose the mortgage. The United States, which had recorded federal tax liens against the property, was named as a defendant. The complaint identified three federal tax liens, recorded in 2002 and 2010.

¶ 7        In a November 2011 letter, Nationstar informed the Kindts they were preapproved for a loan modification that required three monthly trial period plan payments of $2,097.66. To accept this offer, the Kindts had to make the first trial period payment. Attached to the letter was a trial plan notice outlining the plan, two pages of frequently asked questions, and one page of additional information and legal notices. According to the legal notices, if an error in the Kindts' eligibility was detected, the trial period plan would be void. The Kindts did not make any of the trial period plan payments.

¶ 8        In December 2011, the United States answered Nationstar's complaint. It confirmed its lien against the Kindts' property but stated it "ha[d] insufficient knowledge to form a belief as to priority between its lien, [Nationstar's] mortgage, and other liens against the subject premises."

¶ 9        A December 2011 premediation report stated, "trial mod [*sic*] approved. If no permanent agreement is reached, borrower may seek to be referred back to mediation." The report did not specify the modification's details.

¶ 10       In a July 2012 letter, Nationstar informed the Kindts they were approved for a mortgage modification trial period plan. This plan required three monthly payments of $2,108.07. To accept, the Kindts had to call Nationstar to confirm their participation and for directions on making the first trial period plan payment. According to the letter, the loan would be permanently modified if the Kindts complied with the trial period plan. The letter consists of one page with no attachments. A July 2012 email from Nationstar stated the Kindts were approved for the Fannie Mae "Alt 3.0 Modification" trial program. It stated, "There are 3 trial payments to be made in 3 consecutive months, once those are completed successfully we will send out your Final Mod [*sic*] docs for execution." The email did not contain any attachments.

3

¶ 11     The Kindts made the trial plan payments in August, September, and October 2012. Charles called Nationstar requesting the permanent loan modification agreement, and Nationstar said the paperwork was in process. In December 2012, Nationstar ordered a title report. Nationstar then called Charles and told him that due to federal tax liens on the property, Nationstar needed additional information before it would send the loan modification documents. Specifically, Nationstar needed proof the liens were paid in full or in an active repayment plan.

¶ 12     On June 23, 2015, the court entered an order on its own motion. It scheduled the case for a status hearing on July 22. According to the order, no continuances would be granted except upon written motion supported by affidavit with notice and for cause. The clerk certified that notice was mailed to the attorneys of record. A similar notice was filed on July 7. This notice stated the status hearing was scheduled on July 23. On July 22, neither party was present in court. The clerk informed the court the case was up the next day. On July 23, Nationstar was the only party present, and it requested a continuance to October. The court granted the continuance.

¶ 13     In October 2015, the Kindts moved to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)), arguing, among other things, the case should have been dismissed for want of prosecution on July 22 when Nationstar failed to appear. The court denied the motion.

¶ 14     In January 2016, the Kindts filed their verified answer, affirmative defenses, and counterclaim. Their affirmative defenses included lack of standing, lack of jurisdiction, and failure to give notice of acceleration. Their two-count counterclaim alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2014)) and the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 (2014)). Nationstar moved to dismiss the Kindts' affirmative defenses and counterclaim pursuant

4

to section 2-619.1. It argued each affirmative defense and counterclaim was insufficiently pleaded under section 2-615 of the Code. 735 ILCS 5/2-615 (West 2014). Additionally, under section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), Nationstar attached the affidavit of its litigation resolution analyst, Fay Janati, in which Janati swore the acceleration letter was mailed to the Kindts via first class mail on January 4, 2011. In November 2016, the court dismissed the Kindts' affirmative defenses with prejudice, finding the court had jurisdiction and Nationstar had standing and properly sent notice of acceleration to the Kindts. The court dismissed the two-count counterclaim without prejudice and granted the Kindts leave to replead the counterclaim.

¶ 15      In February 2017, the Kindts filed a six-count amended verified counterclaim. The Kindts alleged breach of contract, common law fraud, violation of the Consumer Fraud Act, and intentional and negligent infliction of emotional distress. They also repleaded the FDCPA claim to preserve their right to appeal its earlier dismissal. Nationstar moved to dismiss under section 2-619.1. The court again dismissed the FDCPA claim with prejudice. It dismissed the remaining counts without prejudice.

¶ 16      In August 2017, the Kindts filed their second amended verified counterclaim, alleging the same six counts. Nationstar filed its verified answer and affirmative defenses.

¶ 17      In March 2020, Nationstar amended its verified answer and affirmative defenses. Nationstar alleged it was aware of the federal tax liens recorded in 2002 and 2010 but not additional federal tax liens recorded in 2012. It alleged three affirmative defenses: "no causation," breach of contract, and failure to mitigate damages.

¶ 18      In August 2020, the Kindts withdrew their second amended verified counterclaim. The court granted leave to file a third amended counterclaim.

¶ 19    In January 2021, the Kindts filed their third amended verified counterclaim, with the same six counts as the previous counterclaim. Their claim for violation of the FDCPA was again repleaded only to preserve it for review. Nationstar again moved to dismiss pursuant to section 2-619.1. Nationstar argued, under section 2-619 of the Code, all the claims should be dismissed because the undisputed facts show a permanent loan modification was precluded by the Kindts' failure to furnish proof that the federal tax liens were paid off or on a payment plan. Nationstar further argued the Kindts' claims should be dismissed pursuant to section 2-615 of the Code because the Kindts failed to allege sufficient facts. In response, the Kindts argued Nationstar preapproved them for a permanent loan modification predicated solely on their ability to make three trial period payments, and the offer was not predicated on clearing title to their property. Nationstar replied neither the July 2012 letter nor the July 2012 email purported to be the trial period plan offer or a complete statement of the offer, and the Kindts did not allege facts to show they were guaranteed the loan modification.

¶ 20    In May 2021, the court granted Nationstar's motion and dismissed each count in the Kindts' counterclaim with prejudice. The court noted the July 2012 letter appeared to be an offer to enter into a subsequent final loan modification. The court denied the Kindts' request to replead and their motion to reconsider.

¶ 21    In May 2022, the court entered a judgment of foreclosure and sale.

¶ 22    In July 2022, Nationstar transferred its interest in the mortgage loan to U.S. Bank Trust National Association (U.S. Bank). Nationstar serviced the loan until August 30, 2022, at which point Selene Finance LP took over as the new loan servicer. In October 2022, Nationstar moved to substitute U.S. Bank as the party plaintiff. The court granted the motion.

¶ 23       The judicial sale was held on February 2, 2023. U.S. Bank purchased the property for $479,000. The full debt amount was $580,154.32, resulting in a $101,154.32 deficiency.

¶ 24       In March 2023, U.S. Bank moved for an order approving the report of sale and distribution. It also moved for an eviction order. In response, the Kindts argued their lack of notice regarding the July 2015 status call and the court's refusal to enforce its own order barring any continuances constituted a denial of due process and equal protection. They further argued they were "thwarted" by Nationstar, an entity that had divested itself of any interest in the mortgage loan and therefore had no interest in the litigation. On May 4, 2023, the court entered an order approving the report of sale and distribution and an eviction order. The order directed the sheriff to evict the Kindts after 30 days.

¶ 25       On May 11, 2023, the Kindts moved to vacate the May 4 order, arguing the court misapplied the law in holding the Kindts were not prejudiced by the court's failure to dismiss the suit for want of prosecution in July 2015. In response, U.S. Bank noted the Kindts did not explain why they did not move to dismiss for want of prosecution years ago. The court denied the motion to vacate on June 27, 2023, and stayed the order of possession until July 27, 2023.

¶ 26       The Kindts appealed. The court stayed the order of possession and enjoined U.S. Bank from selling its interest in the property pending the appeal.

¶ 27                                       II. ANALYSIS

¶ 28       The Kindts raise four issues on appeal. They argue the court erred when it (1) granted Nationstar's motion to dismiss the Kindts' third amended verified counterclaim, (2) dismissed with prejudice their amended FDCPA counterclaim, (3) dismissed with prejudice their affirmative defense alleging Nationstar failed to give notice of acceleration, and (4) denied their motion to vacate. We address each in turn.

7

¶ 29                    A. Nationstar's Motion to Dismiss

¶ 30       The Kindts argue the court erred when it granted Nationstar's motion to dismiss their third amended verified counterclaim. They claim Nationstar offered them a loan modification in July 2012 with no precondition that the federal tax liens needed to be on an active repayment plan, and that Nationstar was aware of these tax liens when it filed its complaint for foreclosure in September 2011. The Kindts argue the court conflated the July 2012 trial period plan, which contained no preconditions, with the November 2011 offer, which would have imposed further conditions upon the Kindts' acceptance. By conflating the two, they continue, the court went beyond the four corners of the agreement.

¶ 31       Although the Kindts list all six counts they allege were improperly dismissed, they focus on their breach of contract and FDCPA claims. The remaining claims are predicated on the alleged breach of contract.

¶ 32       Our standard of review of a motion to dismiss under section 2-615 or 2-619 is *de novo*. *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 29. A contract requires an offer, acceptance, and consideration. *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 20. "To be enforceable, the material terms of a contract must also be definite and certain." *Szafranski v. Dunston*, 2015 IL App (1st) 122975-B, ¶ 67. "The terms of a contract will be found to be definite and certain, and therefore the contract enforceable, if a court is able to ascertain what the parties have agreed to, using proper rules of construction and applicable principles of equity." *Bruzas v. Richardson*, 408 Ill. App. 3d 98, 105 (2011).

¶ 33       The Kindts' position that acceptance and performance of the July 2012 trial period plan necessarily guaranteed a permanent loan modification leaves too many uncertain terms regarding how exactly the loan will be modified. Nationstar's July 2012 email indicated further action was

8

needed assuming the Kindts made all three trial period payments: "once those are completed successfully we will send out your Final Mod docs for execution." Here, the offer was not a guaranteed permanent loan modification, but rather steps to determine the eligibility for a permanent loan modification. By definition, a trial period plan allows for reduced payments on a trial basis to determine if a borrower can consistently make those payments; essentially, it is a tryout for a permanent loan modification. Although the Kindts made the three trial period plan payments, the trial period plan did not outline the definite and certain terms that would be necessary for a permanent loan modification, such as monthly payments, interest rate, and maturity date. The agreement to enter into a trial period plan could not be reasonably construed to be the permanent loan modification.

¶ 34　　　　Because the trial period plan was not a permanent loan modification contract, there was no breach of contract. The remaining claims must also fail because they were predicated on the existence of a contract and the breach of that contract. The court did not err in dismissing the Kindts' third amended counterclaim.

¶ 35　　　　　　　　　　　　　　　　　B. FDCPA

¶ 36　　　　The Kindts argue the court erred by dismissing their amended counterclaim for FDCPA violations. According to the Kindts, Nationstar violated the FDCPA by charging "various excessive or unidentifiable amounts," many of which the Kindts attribute to "excessive and unwarranted property inspections made on a monthly basis to determine whether the Kindts have remained in their home." They allege Nationstar admitted it took over servicing of the note and mortgage while the Kindts were already in default, therefore making it subject to the provisions of the FDCPA, as the FDCPA covers servicers who obtain a mortgage already in default.

9

¶ 37 Nationstar insists it is not a "debt collector" as defined by the FDCPA. Nationstar was collecting the debt for itself, not on behalf of another, and is therefore a "creditor." Even if it were a "debt collector," Nationstar argues the Kindts did not allege it was engaged in debt collection activities and the charges were explicitly permitted by the mortgage.

¶ 38 Our standard of review of a motion to dismiss is *de novo*. *Mosby*, 2023 IL 129081, ¶ 29. We may affirm on any basis in the record. *Wells Fargo Bank, N.A. v. Coghlan*, 2021 IL App (3d) 190701, ¶ 12.

¶ 39 The FDCPA distinguishes between "debt collectors" and "creditors" because it applies to debt collectors but not creditors. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). However, we take no position on whether Nationstar was a debt collector or creditor. Instead, we affirm the circuit court's dismissal of the Kindts' counterclaim on a different basis: the Kindts did not sufficiently allege Nationstar was engaged in debt collection activities.

¶ 40 The Kindts specifically cite to the false or misleading representations provision and the unfair practices provision of the FDCPA. See 15 U.S.C. §§ 1692e, 1692f (2014). The former provision states, "A debt collector may not use any false, deceptive, or misleading representation" regarding the "character, amount, or legal status of any debt" in connection with collecting the debt. 15 U.S.C. § 1692e(2)(A) (West 2014). Under the latter provision, a "debt collector may not use unfair or unconscionable means" to collect a debt, which includes the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt[.]" 15 U.S.C. § 1692f(1) (West 2014).

¶ 41 Because the mortgage expressly authorized the fees that the Kindts take issue with, there is no FDCPA violation. According to the mortgage, "[i]f Borrower fails to perform the covenants

10

and agreement contained in this Security Instrument *** Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the property[.]" Further, any amounts disbursed by Lender "shall become additional debt of Borrower secured by this Security Instrument." Moreover, the Kindts do not define what the "false, deceptive, or misleading representation" of the debt was. Presumably, the additional charges added to the overall debt are what the Kindts argue constitutes misleading representation. However, the mortgage expressly permitted Nationstar to take appropriate action to protect or assess the property, which then became the Kindts' additional debt. We affirm the dismissal of the FDCPA claim.

¶ 42                                    C. Notice of Acceleration

¶ 43          The Kindts argue the court erred when it dismissed their affirmative defense.[1] They expressly deny receiving notice of acceleration, which they argue rebuts the mailbox-rule presumption. The Kindts raise several arguments for the first time on appeal. They argue that, if the acceleration letter was sent at all, it was sent by certified, not first class, mail, because the computer-reprinted envelope produced by Nationstar appeared to contain a certified mailing barcode. The Kindts also assert Janati's affidavit is deficient because it does not contain a proof of service indicating who purportedly sent the letter, when it was sent, or by what means. The Kindts further argue notice of acceleration is a condition precedent to foreclosure, and therefore the judgment of foreclosure and sale, and the order approving the report of sale must be reversed.

_____

[1]We note that this affirmative defense is not a true affirmative defense. See *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 16 (explaining an unsatisfied condition precedent is not a proper defense because it does not "give color" to the complaint). However, because the parties and the court treated it as such, we will do the same.

¶ 44　　　　It is well-settled that arguments not raised in the trial court may not be raised for the first time on appeal. *Seifert v. Sneckenberg Thompson & Brody, LLP*, 2022 IL App (1st) 200966, ¶ 43. Therefore, we do not address these arguments. See *In re Marriage of Schneeweis*, 2016 IL App (2d) 140147, ¶ 46 (declining to address arguments that were not raised in the trial court).

¶ 45　　　　Forfeiture notwithstanding, Nationstar maintains the acceleration letter was mailed via first class mail, and U.S. Bank argues the Kindts' allegation that the letter was mailed via certified mail is unsworn, self-serving, and unsupported by the record.

¶ 46　　　　In their reply brief, the Kindts argue, for the first time, that Nationstar improperly moved to dismiss their affirmative defense pursuant to section 2-619(a)(9) of the Code because it was limited to attacking the legal sufficiency of their affirmative defense pursuant to section 2-615 of the Code. However, points not raised in the opening brief are forfeited and cannot be raised in a reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Thus, the only argument that remains is the Kindts' denial that they received the notice of acceleration.

¶ 47　　　　We review the grant of a motion to dismiss *de novo*. *Mosby*, 2023 IL 129081, ¶ 29. The Kindts alleged in a verified pleading that they did not receive the notice of acceleration. Per Janati's affidavit, Nationstar sent the acceleration notice to the Kindts through first class mail. The Kindts did not file a counteraffidavit. "[W]here well alleged facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary averments in the adverse party's pleadings." *Central Clearing, Inc. v. Omega Industries, Inc.*, 42 Ill. App. 3d 1025, 1028 (1976). "The fact that the pleading may be verified will generally not affect this rule since the pleading will rarely (and should not) match the specificity of the affidavit." *Id.* According to the "mailbox rule," "properly addressed letters sent via regular mail carry a presumption of delivery when they are deposited in the mail with postage prepaid." *Deutsche Bank National Trust*

12

*Co. as Trustee for First Franklin Mortgage Loan Trust 2005-FF8 v. Roongseang*, 2019 IL App (1st) 180948, ¶ 30. "This rule was developed to prohibit a party from undermining the reliability of giving notice by mail by asserting a mere denial of receipt." *Id.* Moreover, according to the mortgage, "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail[.]" The Kindts' bare denial in receiving the acceleration notice is not enough to overcome the terms of the mortgage, Janati's affidavit, and the mailbox rule. Thus, the court did not err by dismissing the Kindts' affirmative defense.

¶ 48                                  D. Kindts' Motion to Vacate

¶ 49        Finally, the Kindts contend the court erred in denying their "motion to vacate order approving report of sale and distribution and eviction order." Specifically, they argue the court misapplied the law by finding they were not prejudiced when they were not given notice of the court call in July 2015. The Kindts claim they were also prejudiced when Nationstar's counsel continued to appear in court after Nationstar divested itself of all interest in the Kindts' note and mortgage in July 2022. Further, they assert Nationstar's divested interest "divested the circuit court of original jurisdiction over this case because [Nationstar] no longer had a justiciable issue before the circuit court." But the Kindts do not cite to caselaw in support of their argument that an assignment of a mortgage and substitution of parties somehow divests a circuit court of its jurisdiction. We do not address this argument. See *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 27. ("Contentions supported by some argument but by absolutely no authority do not meet the requirements of Rule 341(h)(7), and we will treat the argument as having been procedurally defaulted.").

¶ 50    U.S. Bank argues the Kindts fail to show fraud, misrepresentation, or inability to protect their property interests with respect to the July 2015 status hearing or the timing of the substitution of party plaintiff.

¶ 51    A court's ruling on a motion to vacate a foreclosure sale is reviewed for an abuse of discretion. *Eastern Savings Bank, FSB v. Andrews-Lewis*, 2023 IL App (1st) 220413, ¶ 14. "A circuit court abuses its discretion when its ruling rests on an error of law or where no reasonable person would take the view adopted by the circuit court." *Id.* "The party opposing the foreclosure sale bears the burden of proving that sufficient grounds exist to disapprove the sale." *Id.*

¶ 52    The Kindts filed their "motion to vacate order approving report of sale and distribution and eviction order" pursuant to section 2-1301(e) of the Code. 735 ILCS 5/2-1301(e) (West 2022). In that motion, the Kindts argued "they were significantly prejudiced to the extent justice was otherwise not done as that phrase is used in 735 ILCS 5/15-1508(b)(iv) [(West 2022)]." Until a motion to confirm a judicial sale is filed, a borrower may seek to vacate a default judgment of foreclosure pursuant to section 2-1301(e). *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 27. "However, after a motion to confirm the judicial sale has been filed, a borrower seeking to set aside a default judgment of foreclosure may only do so by filing objections to the confirmation of the sale under the provisions of section 15-1508(b)." *Id.* Because the Kindts did not move to vacate until after U.S. Bank had moved to confirm the sale, section 2-1301(e) was not available to them. Rather, the proper avenue to vacate the confirmation of sale was section 15-1508(b).

¶ 53    Section 1508(b) provides that a court shall enter an order confirming the sale unless it "finds that *** justice was otherwise not done." 735 ILCS 5/15-1508(b)(iv) (West 2022). Under section 15-1508(b)(iv), the borrower must establish "that justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented the borrower from raising his

14

meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests." *McCluskey*, 2013 IL 115469, ¶ 26. "The injustice must be great enough to outweigh the need to establish stability in the sale process." *BMO Harris Bank, N.A. v. Wolverine Properties, LLC*, 2015 IL App (2d) 140921, ¶ 26.

¶ 54        Here, the Kindts have not established that justice was otherwise not done. The record shows the clerk certified it sent notice of the July 2015 court call to counsel. Even if notice was not received, the Kindts fail to show how not being heard in July 2015 violated their due process rights. The Kindts already raised this issue in their November 2015 motion to dismiss. There was nothing preventing the Kindts from bringing their own motion to dismiss for want of prosecution at any point in time. Moreover, the Kindts have appeared and extensively litigated this case.

¶ 55        Additionally, the Kindts do not establish great injustice regarding Nationstar's divested interest. Section 2-1008(a) of the Code allows for the substitution of a party. In cases where there is a transfer of interest after the start of a legal action, whether before or after judgment, or if a new interested party emerges after the commencement of the action, the action does not abate. 735 ILCS 5/2-1008 (West 2020). Instead, the court can order that the appropriate parties be substituted or added, and the case continues. *Id.* In addition, the Code specifies that an action will not be dismissed for misjoinder or nonjoinder of necessary parties without reasonable opportunity to add them as parties. 735 ILCS 5/2-407 (West 2020); see *Bayview Loan Servicing, LLC v. Cornejo*, 2015 IL App (3d) 140412, ¶ 17 (finding no abuse of discretion in allowing the substitution of plaintiff following a nonjoinder or misjoinder of parties). The Kindts again fail to show how justice was otherwise not done due to the delay in substituting parties. They do not allege how they were prejudiced when Nationstar filed a motion instead of U.S. Bank. They do not explain how the late

15

substitution of parties prevented them from raising a meritorious defense to the foreclosure complaint. Therefore, the court did not abuse its discretion when it denied the Kindts' motion to vacate.

¶ 56                                   III. CONCLUSION

¶ 57          The judgment of the circuit court of Will County is affirmed.

¶ 58          Affirmed.